**In re APEX INTERNATIONAL MANAGEMENT SERVICES, INC., Debtor.**

**Bankruptcy No. 89–652–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 17, 1997.

Charles Baer, Special Assistant, United States Attorney, Jacksonville, FL.

Randall Freeman, Ocoee, FL, for Movant Fred E. Johns.

Charles W. Grant, Jacksonville, FL, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court on a Motion for Hearing, filed by Ben Griffin on behalf of Fred E. Johns, to present new evidence of fraud on the settlement agreement dated December 7, 1994. After hearings on February 27, 1997, and August 14, 1997, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Debtor filed a voluntary petition for relief under Chapter 11 on March 14, 1989. The case was converted to a Chapter 7 case on April 13, 1990, after the debtor failed to reorganize.

2. On September 14, 1994, this Court issued an Order approving a settlement be-

tween the Trustee and the United States Navy, pursuant to which the debtor received approximately $6.24 million.

3. Subsequently, on December 8, 1994, the Trustee filed a settlement agreement, dated December 7, 1994, which resolved various parties' claims to the substantial funds received by the debtor from the Navy. This "December Agreement" was purportedly executed by the Trustee, the debtor, the United States of America, Mr. Johns (as the debtor corporation's former president), First Union National Bank, and NationsBank.

4. Mr. Johns was represented by William Cooper during all times relevant to the December Agreement.

5. On January 12, 1995, a memorandum in support of the December Agreement was filed on behalf of the debtor and Fred Johns.

6. At hearings conducted on objections to the December Agreement in February, 1995, Mr. Cooper argued in favor of the December Agreement.

7. This Court issued its order approving the December Agreement on February 14, 1995 (hereinafter February 14, 1995 Order).

8. On July 24, 1995, Ben Griffin filed a document entitled "Motion For a Hearing" on behalf of Mr. Johns. The Motion was based on Mr. Johns' claims that the December Agreement differed from the settlement agreement he signed on September 29, 1994 (September Agreement), and that his signature on the September Agreement was utilized in the December Agreement. Mr. Johns asserted that the September Agreement insulated him from any personal liability as a responsible person for the payroll taxes of the debtor, whereas the December Agreement did not.

9. After hearings on August 22, 1995, and September 7, 1995, this Court, deeming the Motion For a Hearing to be a motion to vacate or modify the February 14, 1995 Order, issued an order denying relief on the basis that Mr. Johns had failed to present any evidence of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, misrepresentation, or any other ground for relief from the order pursuant to Federal Rule of Bankruptcy Procedure 9024.[1]

10. Over one year later, on December 9, 1996, Mr. Griffin filed a Motion for Hearing to present new evidence of fraud on the December Agreement. Hearings on the motion were held on February 27, 1997, and August 14, 1997.[2]

11. Mr. Johns again requests that this Court set aside the December Agreement on the basis that the agreement differs from the September Agreement, and was not actually signed by Mr. Johns. Rather, Mr. Johns claims the September Agreement was "slip-sheeted", by which the page with his signature was detached from the September Agreement and attached to the December Agreement without his knowledge or consent. Mr. Johns continues to assert his belief that the September Agreement insulated him from responsible person liability to the Internal Revenue Service, and the December Agreement does not.

12. The September Agreement contains, at paragraph six, the following provision:

"the IRS shall not release Mr. Johns personally from any responsible person liability, if any, which may exist, and Mr. Johns shall not release the IRS from any claims or counterclaims, if any, which may exist."

1. On September 18, 1995, Mr. Griffin filed a Motion for Re–Hearing of the hearing held on September 7, 1995. The motion was denied by Order dated September 20, 1995.

2. Walter West, the former vice-president of the debtor corporation, submitted an amicus curie brief to the Court in support of Mr. Johns' request for relief. Objections to the motion were filed by counsel for Nationsbank, the United States, and First Union National Bank.

In addition to a brief, Mr. West submitted a document entitled "Objections to First Union National Bank of Florida's Proposed Findings of Fact and Conclusions of Law on 'Motion Filed by Ben Griffin'". Mr. West is not a party to this case, and was not involved in the disputed settlement agreement. He is not entitled to submit an objection in this case, and the objection was not considered by the Court.

13. The December Agreement contains, at paragraph six, a provision that the agreement:

"shall not constitute a release of Mr. Johns or any other officer or director of Apex from any responsible person liability; and Mr. Johns shall not release the United States from any claims or counterclaims, if any, which may exist."

14. Mr. Johns testified that he did not sign the December Agreement and was not aware of any changes made to the September Agreement prior to the filing of the December Agreement. (Aug. 22, 1995 Tr. Trustee Ex. 1 at 9–10.)

15. Mr. Johns contends that the change in language in paragraph six of the December Agreement creates liability for him as a responsible party in the amount of $1.7 million. (Feb. 27, 1997 Tr. at 12.) However, Mr. Johns also admits that the settlement agreement he signed in September, 1994, provided that the IRS would not release him personally, and that he would not release the IRS on his claims. (Aug. 22, 1995 Tr. Trustee Ex. 1 at 22.)

16. There is conflicting testimony regarding when Mr. Johns first noticed that the December Agreement differed from the agreement he signed in September of 1994. At the August 22, 1995 hearing, Mr. Johns testified that he had learned of the change three to four weeks prior to the hearing from Mr. West. (Id. at 10–11.) At the February 27, 1997 hearing, Mr. Johns testified that he learned of the change from Mr. West in early January, 1995. (Feb. 27, 1997 Tr. at 12.)

17. Mr. Cooper testified that no one asked him to authorize a substitution of the signature page of the September Agreement. (Sept. 7, 1995 Tr. at 15–16.) Mr. Cooper also testified that he was aware of a change in paragraph 4 of the September Agreement, but not in paragraph 6. Id. at 16. However, he believes that the agreement ultimately approved by the court was in the interests of Mr. Johns, Id. at 21, and that there is no substantive change in paragraph six from the September Agreement, Id. at 28.

18. Mr. Cooper could not say whether Mr. Johns had full knowledge of the change that is indicated in the December Agreement, Id. at 21, but he testified that he had Mr. Johns' consent to the final settlement as approved by the Court, Id. at 24. Mr. Cooper also testified that Mr. Johns went ahead with the agreement understanding he would remain personally responsible to the IRS, and had obtained tax counsel to help him with that problem. (Sept. 7, 1995 Tr. at 22.)

19. Testimony was also given by Don O. Quinn, a forensic document examiner. Mr. Quinn testified that the "Fred E. Johns" signature on the December Agreement was not originally written on that document, but is a photocopy from the same original source as Mr. Johns' signature on the September Agreement. (Feb. 27, 1997 Tr. at 53.) Mr. Quinn further testified that he believes slipsheeting occurred in this case. Id. at 54.

20. Mr. Johns requests that this Court nullify the December Agreement, order the parties to attempt to enter a new agreement, order an investigation into the source of fraud on Mr. Johns and the Court, and, impose sanctions. The Court will therefore, once again, deem the Motion for Hearing to be a motion to vacate or modify the February 14, 1995 Order.

21. Movant does not base his request for relief on Federal Rule of Bankruptcy Procedure 9024. Rather, he requests that the Court nullify the document pursuant to its inherent ability to nullify a fraudulent document pursuant to 11 U.S.C. § 105(a).

## CONCLUSIONS OF LAW

 The February 14, 1995 Order Approving Settlement is a final order. Any relief from that order must be obtained pursuant to Federal Rule of Bankruptcy Procedure 9024. With three exceptions not relevant here, Rule 9024 makes Federal Rule of Civil Procedure 60 applicable in cases under the Bankruptcy Code.[3] Rule 60(b) provides:

---

**3.** The Movant's motion was predicated completely on 11 U.S.C. § 105(a). The Court itself proposes Rule 9024, and consequently 60(b), as a possible source of authority for the requested relief.

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to more for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action to ... set aside a judgment for fraud upon the court.

Fed.R.Civ.P. 60(b). The movant bears the burden of proving one of the six reasons justifying relief from a final order. *Drake v. Dennis et al. (In re Dennis)*, 209 B.R. 20, 25 (Bankr.S.D.Ga.1996).

Rule 60(b) grants a party one year from the date of the final order to motion for relief pursuant to subsections (1), (2), and (3). Because more than one year has passed between the entry of the order approving the settlement (February 14, 1995) and the filing of the instant motion (December 9, 1996), Mr. Johns clearly cannot seek relief under Rule 60(b)(1), (2), or (3).

 Subsection (b)(6) of Rule 60 allows relief from a final order for any reason justifying relief, other than for those reasons listed in (b)(1)-(5). The one year time limit applicable to exceptions (1) through (5) does not apply to exception (6). However, relief pursuant to 60(b)(6) may only be granted in exceptional or extraordinary circumstances. *Id.* at 27. Movant has failed to show the presence of such circumstances in this case.

In *In re Simons*, No. 95–12907–8P7, 1997 WL 631000 (Bankr.M.D.Fla. Sept. 8, 1997), the court denied a Motion for Reconsideration and/or Rehearing of Second Motion to Reopen Case. The movant in *Simons* originally filed a Motion to Reopen Case, which the court denied. *Id.* at *1. The movant failed to appeal the denial of his first motion,

but instead filed a Second Motion to Reopen, which was also denied. *Id.* The Movant then sought to have his second motion reconsidered, and requested relief, pursuant to Rule 60(b)(6), from the order denying his first Motion to Reopen. *Id.* at *2. The court denied relief under subsection (b)(6), finding that the movant "had ample opportunity to challenge the correctness of this Court's first order ... by a timely filed notice of appeal." *Id.* The case at hand is no different. Rather than appealing the Court's decision on his first motion for a hearing, Mr. Johns waited over a year to file a second motion seeking the same relief. Mr. Johns had ample opportunity to appeal not only the denial of his first motion for a hearing, but the original order approving the settlement as well. Mr. Johns failed to utilize this opportunity and relief under Rule 60(b)(6) is consequently unavailable. *See Martinez–McBean v. Government of Virgin Islands*, 562 F.2d 908 (3d Cir.1977) (holding it is improper to grant relief pursuant to Rule 60(b) if the Movant could have reasonably sought the same relief by means of an appeal).

 Relief is also unavailable to Mr. Johns pursuant to the savings clause of Rule 60(b), which allows a court to entertain an independent equitable action to set aside a judgment for fraud upon the court. Due to the universal interest in the finality of judgments, resort to an independent action is only permitted under unusual and exceptional circumstances. *Walter v. Celotex Corp. (In re Hillsborough Holdings Corp.)*, 203 B.R. 1000, 1006 (Bankr.M.D.Fla.1996) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1281 (6th Cir.1991)). An independent action for equitable relief pursuant to the savings clause is also unavailable to a party whose situation is due to his own fault, neglect, or carelessness. *Winfield Assocs. Inc. v. Stonecipher*, 429 F.2d 1087, 1090 (10th Cir.1970). "Where complainant's own negligence or oversight, however innocent, contributed to the original judgment, an independent action for relief is not proper unless the evidence which would establish injustice is 'practically conclusive'." *Booker v. Dugger*, 825 F.2d 281, 284 (11th Cir.1987) (citing *Johnson Waste Materials v. Marshall*, 611 F.2d 593, 595 (5th Cir.1980)),

*reh'g denied,* 830 F.2d 1129 (11th Cir.1987), *and cert. denied,* 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988).

 As previously stated, the circumstances of this case cannot be characterized as "exceptional". Furthermore, the Court finds that Mr. Johns' own neglect led to the Order approving the December Agreement. Mr. Johns claims his signature was fraudulently attached to the December Agreement. Yet, Mr. Johns testified that he noticed that the December Agreement differed from the September Agreement in early January, 1995. (Feb. 27, 1997 Tr. at 12.) He nevertheless filed a memorandum in support of the December Agreement on January 12, 1995 and allowed his attorney to argue in favor of the December Agreement to the Court in early February. Mr. Johns has failed to produce any reason for this inconsistency, and has also failed to explain the delays in filing his first and second motions for hearing regarding fraud in the settlement agreement. Broad allegations that the agreement was changed without his knowledge, and that he did not consent to the signature page from the September Agreement being utilized in the December Agreement, do not suffice when "practically conclusive" evidence of injustice is required.

It has been held that relief in the form of an independent action is unavailable "if the complaining party 'has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action ... to open, vacate, modify or otherwise obtain relief against, the judgment.'" *Winfield,* 429 F.2d at 1090 (citing 49 C.J.S. Judgments § 343a). There is no question that Mr. Johns had the opportunity to obtain relief from the February, 1995 Order. Not only could Mr. Johns have appealed the order, but he could have and did file a motion to vacate the order. Mr. Johns clearly had ample opportunity to challenge the February 14, 1995 Order, and an independent action for relief under the savings clause of Rule 60(b) is therefore not proper.

The Court declines to exercise its equitable powers to nullify a fraudulent document under 11 U.S.C. § 105(a), as requested by Movant. Section 105(a) of the Code grants a court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. 105(a) (1997). The power granted by this subsection is, however, limited to actions authorized by the Code or Rules. *Clay County Bank v. Culton (In re Culton),* 161 B.R. 76, 77 (Bankr.M.D.Fla. 1993). This Court has determined that relief is unavailable to Mr. Johns pursuant to Rule 60(b). Consequently, the Court is without authority to vacate the February 14, 1995 Order based on § 105(a). *See Id.* (holding that Plaintiff was not entitled to relief pursuant to Rule 60(b), and that the Court was therefore without authority to vacate a discharge on the basis of § 105).

The Court finds that Movant is not entitled to relief pursuant to Rule 60(b). The Court is consequently without jurisdiction to modify or alter any portion of the settlement agreement. The motion is denied, and a separate order consistent with these findings of fact and conclusions of law will be entered.