**In re Robert Fred NORRIS, Debtor.**

**Bankruptcy No. 95–04162–BKC–3P3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 15, 1998.

Andrew J. Decker, III, Live Oak, FL, for debtor.

Jennifer S. Ebanks, Clearwater, FL, for U.S.A.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Verified Motion for Relief from Order Amending Confirmed Chapter 13 Plan filed by secured creditor, UNITED STATES OF AMERICA, acting through FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE ("USA"). A hearing was conducted on October 7, 1998, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. USA holds a secured claim on certain real property owned by the Debtor. On May 17, 1996, this Court entered an order confirming Debtor's Chapter 13 Plan. (Doc. 35). The plan calls for payment of interest on the debt owed to USA.

2. On August 29, 1997, the Debtor filed his Second Notice of Post–Confirmation Modification to Chapter 13 Plan of Reorganization pursuant to 11 U.S.C. § 1329. (Doc. 51). In that notice, Debtor represented that $17,462.78 was due to USA.

3. On September 23, 1997, USA served an Objection to Debtor's Second Notice of Post–Confirmation Modification to Chapter 13 Plan of Reorganization. (Doc. 52). USA objected to the proposed modification on the basis that $19,120.20 was due.

4. The Court conducted a hearing on December 3, 1997, on the Debtor's Second Notice of Post–Confirmation Modification to Chapter 13 Plan and the Objection filed by USA. The purpose of this Second Post–Con-

firmation Modification hearing was to establish the exact amount owed to USA so that the Debtor could obtain a loan from a private lender to satisfy and discharge in full the secured claim of the creditor. (Doc. 51). USA was represented at this hearing by local counsel, Sharon L. Simmons, making a limited appearance on behalf of MASON & ASSOCIATES, P.A. After receiving preliminary evidence with respect to the actual balance owed to USA, the Court continued the hearing to December 22, 1997, in order to provide the Chapter 13 Trustee with the opportunity to obtain verification of payment records and data so she could testify as to the amounts disbursed to USA. (Doc. 52). From this testimony, the balance remaining due and payable to USA under the Debtor's Plan was to be determined by the parties. (Docs. 52, 55).

5. On December 22, 1997, a continued evidentiary hearing was conducted on the Debtor's Second Notice of Post–Confirmation Modification to Chapter 13 Plan and the Objection filed by USA. USA was again represented at this hearing by local counsel, Sharon L. Simmons, making a limited appearance on behalf of MASON & ASSOCIATES, P.A. After the conclusion of the Chapter 13 Trustee's testimony and the presentation of evidence, Debtor's counsel asserted that the balance owed to USA was $11,862.28. USA's local counsel did not object to the figure given by Debtor's counsel. Based on the foregoing, the Court then ruled that the balance owed USA was $11,862.28 and directed Debtor's counsel to prepare the Order. (Docs. 56, 57).

6. Main counsel for USA, Jennifer S. Ebanks, admitted that her client had the opportunity to present witnesses and accounting data to the Court at both the December 3, and December 22, 1997, hearings. At the October 7, 1998 hearing, Ms. Ebanks gave the following responses to Debtor's counsel's questions:

Q: Your client had the opportunity to present a witness and present accounting data to His Honor on December 3rd, 1997; isn't that correct?

A: Yes.

Q: And your client had the opportunity at the continued hearing on December 22nd, 1997, to present accounting information from your client or from a representative of your client to the Court; isn't that correct?

A: Yes.

(Tr. 23).

7. On December 26, 1997, Debtor's counsel transmitted a draft copy of the proposed Order Amending Confirmed Chapter 13 Plan to USA's local counsel. USA admitted that its local counsel transmitted both a copy of the proposed Order and handwritten calculations of principal and interest prepared by Debtor's counsel to MASON & ASSOCIATES, P.A.

Q: And you said that Ms. Simmons—does she forward to you a copy of the draft order that I had faxed to her office?

A: I believe so.

Q: And, with that letter that I sent to Ms. Simmons, dated December 22nd, I included a photocopy of my handwritten calculations of principal and interest; isn't that correct?

A: Yes.

(Tr. 24).

8. On January 16, 1998, Debtor's counsel submitted a transmittal letter and an Order Amending Confirmed Chapter 13 Plan to the Court for entry. USA admits that its counsel, MASON & ASSOCIATES, P.A., received and reviewed a copy of this order.

Q: Okay. But, once the Judge signed it, you did review it with your client?

A: Yes.

Q: And specifically, the last paragraph of that order says that, as of December 22nd, 1997, the amount of payoff is $11,862.28, with interest after December 22nd, 1997, at the daily rate of $2.44. Did you only review part of the order with your client, or did you review all of it with them?

A: I reviewed the order with my client.

Q: And did your client advise you that that was wrong?

A: No, they didn't.

Q: And as the result of that conference with your client, you took no action until this motion was filed?

A: That's right.

(Tr. 26).

9. On January 23, 1998, the Court entered the Order Amending Confirmed Chapter 13 Plan. (Doc. 57). USA admits that from January 16, 1998, until January 23, 1998, when the Court entered the Order Amending Confirmed Chapter 13 Plan, MASON & ASSOCIATES, P.A. made no communication to the Court or Debtor's counsel regarding that Order or the contents of that Order.

Q: And, from January 16th, 1998 until January 23rd, 1998, when the Court entered that order, your firm made no communication to my office or to the Court about that order or the contents of that order; isn't that correct?

A: Yes.

Q: And your firm received a copy of that signed order on January 26, 1998?

A: Approximately. I don't know the exact date.

(Tr. 16).

10. USA further admits that once its counsel received a copy of the Order Amending Confirmed Chapter 13 Plan, MASON & ASSOCIATES, P.A. reviewed that Order with their client. USA did not advise MASON & ASSOCIATES, P.A. of any error in the Order nor did USA's attorneys take any action with respect to that order until this verified motion was filed on August 27, 1998. (Tr. 27; Doc. 73).

11. On July 17, 1998, Debtor served his Amended Notice of Sale of Property of the Estate Free and Clear of all Liens and Interests pursuant to 11 U.S.C. § 363(b). The proposed sale described in this Amended Notice would presumably generate sufficient funds to satisfy and discharge the secured claim of USA. (Doc. 65).

12. In the Amended Notice, the Debtor proposes to pay the creditor, USA, the sum of $11,862.28 together with interest at the rate of $2.44 per day from December 22, 1997, to the date of the closing. These figures were based directly on the uncontested calculations of Debtor's counsel, and the Order Amending Confirmed Chapter 13 Plan entered by the Court on January 23, 1998.

13. On August 4, 1998, USA served an Objection to Debtor's Amended Notice of Sale and Request for Hearing. The basis for USA's objection was: "The debtor has understated the amount due and owing creditor USA. The proposed sale fails to provide for the total payoff of the remaining secured portion of this creditor's loan." (Doc. 68).

14. On October 7, 1998, an evidentiary hearing was held on the USA's Verified Motion for Relief from Order Amending Confirmed Chapter 13 Plan. The only evidence presented by USA was in the form of testimony of its attorney, Jennifer S. Ebanks, who joined MASON & ASSOCIATES, P.A. law firm on January 5, 1998. Ms. Ebanks said she understood the purpose of the hearings held in December, 1997, were to determine the amounts and number of payments paid by the Chapter 13 Trustee to USA, and not to determine the total balance owed. (Tr. 14).

15. USA presented no additional evidence suggesting the total amount owed to them by the Debtor under the confirmed Chapter 13 Plan. USA alleges Debtor's calculations are incorrect, and thus, result in Debtor receiving an interest-free loan. Debtor stands by his calculations and the sum contained in this Court's prior order.

## CONCLUSIONS OF LAW

USA seeks relief from the entry of the Order Amending Confirmed Chapter 13 Plan dated January 23, 1998, pursuant to Rule 9024, Fed.R.Bankr.P., and Rule 60(b)(1) and (b)(6), Fed.R.Civ.P. USA first argues that the Court should grant its motion for relief because its failure to review the order was the result of excusable neglect. Next, USA asserts that Debtor is judicially estopped from taking the position that USA is bound by the erroneous total contained in this Court's prior order since Debtor should have known of the error. Finally, USA claims that relief from order modifying the plan is appropriate because there are unusual and

extreme circumstances which compel equitable relief.

■ The January 23, 1998 Order Amending Confirmed Chapter 13 Plan is a final order. Any relief from this order must be obtained pursuant to Rule 9024, Fed. R.Bankr.P. With certain exceptions not relevant here, Bankruptcy Rule 9024 makes Rule 60, Fed.R.Civ.P. applicable to cases under the Bankruptcy Code. Rule 60(b) provides in relevant part:

> Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect .... or (6) any other reason justifying relief from the operation of the judgment.

"The movant bears the burden of proving one of the six reasons justifying relief from a final order." *In re Apex Int'l Management Serv., Inc.,* 215 B.R. 245, 249 (Bankr. M.D.Fla.1997) (citing *Drake v. Dennis (In re Dennis),* 209 B.R. 20, 25 (Bankr.S.D.Ga. 1996)).

Rule 60(b) grants a party one year from the date of the final order to motion for relief under subsections (1), (2), or (3). Since the instant motion was brought on August 4, 1998, less than one year after the January 23, 1998 Order Amending Confirmed Chapter 13 Plan, USA can clearly seek relief under Rule 60(b)(1).

■ However, as this Court noted in *In re Apex Int'l Management Serv., Inc.,* 215 B.R. at 249, Rule 60(b)(6) should only be used in exceptional or extraordinary circumstances and only as a residual clause in cases which are not covered under the first five subsections of Rule 60(b). *See Pierce v. United Mine Workers of America Welfare,* 770 F.2d 449, 451 (6th Cir.1985), *cert. denied,* 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986). Because USA's claim for excusable neglect is covered under Rule 60(b)(1), it is therefore not cognizable under Rule 60(b)(6).[1] *See Liljeberg v. Health Serv. Acquisition Corp.,* 486 U.S. 847, 863 and n. 11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (noting subsections (b)(1) and (b)(6) of Rule 60 are mutually exclusive, and thus party who fails to take timely action due to excusable neglect, may not seek relief by resorting to subsection (6)); *Ackermann v. United States,* 340 U.S. 193, 197–200, 71 S.Ct. 209, 95 L.Ed. 207 (1950) (suggesting party must be faultless in the delay in order to show "extraordinary circumstances" under Rule 60(b)(6)); *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (noting if party partly to blame for delay, party must seek relief under subsection (1) and neglect must be excusable).

This Court, in *In re King,* 165 B.R. 296, 298 (Bankr.M.D.Fla.1994), has previously noted that the Supreme Court has determined that a two-step inquiry is required to make the excusable neglect determination under Rule 60(b). *See generally Pioneer,* 507 U.S. 380, 113 S.Ct. 1489 (addressing excusable neglect standard in context of enlarging time for filing proof of claim under Fed. R.Bankr.P. 9006(b)(2)). First, in *Pioneer,* 507 U.S. at 389, 113 S.Ct. 1489, the Supreme Court decided that excusable neglect encompasses the idea of negligence, and is not limited to situations that are beyond the movant's control. *In re King,* 165 B.R. at 298. Second, the Court found that the question of whether the neglect is excusable is an equitable one which requires the Court to view the totality of the circumstances when

---

1. Regardless, USA has failed to show the presence of exceptional or extraordinary circumstances in this case. USA had ample opportunity to challenge the correctness of this Court's order by a timely filed notice of appeal. Rather than appealing the Court's Order Amending Confirmed Chapter 13 Plan, USA waited over six months to file a motion for relief from that order. USA failed to utilize this opportunity and therefore, the circumstances do not compel this Court to grant equitable relief. Consequently, relief under Rule 60(b)(6) is unavailable. *See Martinez–McBean v. Government of Virgin Islands,* 562 F.2d 908 (3d Cir.1977) (holding it improper to grant relief pursuant to Rule 60(b) if Movant could have reasonably sought the same relief by means of appeal); *see also In re Int'l Management Serv., Inc.,* 215 B.R. at 249 (same); *In re Simons,* No. 95–12907–8P7, 1997 WL 631000 (Bankr.M.D.Fla. Sept. 8, 1997).

making its decision. *Id.* The Court noted several factors relevant to its determination: the danger of prejudice to the debtor, the length of the delay and potential impact on judicial proceedings, the reason for the delay including whether it is within the reasonable control of the movant and whether movant acted in good faith. *Id.*

■ The *Pioneer* Court further stated that neglect is to be considered in its ordinary sense, which means: ' "to give little attention or respect" to a matter, or, "to leave undone or unattended . . . . due to carelessness." ' 507 U.S. at 388, 113 S.Ct. 1489 (citing *Webster's Ninth New Collegiate Dictionary* 791 (1983)). It is clear that USA's failure to initially respond to the Order Amending Confirmed Chapter 13 Plan falls within the confines of the ordinary meaning of neglect. The failure to respond was due to USA's and USA's counsel's failure to properly review the calculations made by Debtor's counsel and total sum contained in this Court's prior order. Since the failure to respond was due to neglect, the Court must now assess the circumstances in this case to determine whether the neglect of USA and their counsel was in fact excusable. *Id.* at 397–98, 113 S.Ct. 1489; *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (holding client may be made to suffer consequence of dismissal for attorney's failure to attend pretrial conference); *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) (holding client could be penalized for counsel's tardy filing of tax return).

In *Pioneer*, the Court found the failure to timely file a claim, where the notice of the bar date was "inconspicuous," "peculiar" and "left a dramatic ambiguity in the notification" constituted excusable neglect. 507 U.S. at 388, 113 S.Ct. 1489. The Court placed great emphasis on the less than clear notice stating that "[t]his is not to say, of course, that respondents counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find neglect to be excusable." *Id.* at 398, 113 S.Ct. 1489.

■ Although the Court agrees with USA that there is no indication that prejudice would result from a finding of excusable neglect, and there is no indication of bad faith, the notice of the final claim amount provided to USA and USA's counsel was not at all ambiguous. Unlike the notice in *Pioneer,* the Order Amending Confirmed Chapter 13 Plan states clearly and conspicuously that "The amount owed to the secured creditor, **UNITED STATES OF AMERICA, acting through FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE,** with respect to its secured claim as of **December 22, 1997,** is $11,862.28 with interest accruing after **December 22, 1997,** at a daily rate of $2.44. (Doc. 57). USA failed to communicate with its counsel concerning the final claim amount even after reviewing the order with her. Further, counsel for USA had the independent opportunity to review the figures testified to by the Chapter 13 Trustee and presented by Debtor's counsel, do her own calculations and auditing, a present figures she deemed to be correct.

Notwithstanding USA's representation by counsel at both December, 1997 hearings; review of Debtor's counsel's handwritten figures of principal and interest; review of the proposed Order Amending Confirmed Chapter 13 Plan before submission to the Court; and review with their client of the Order after entry by the Court, it was not until over six months had elapsed and Debtor was preparing to sell his land to satisfy USA's secured claim, that USA actually did work to review the calculations presented by Debtor. USA's failure to take action concerning the entire sum due it in the face of a clear, conspicuous order from the Court stating the total amount of their claim is sufficient to distinguish this case from *Pioneer.* Thus, USA's inaction was not due to excusable neglect, and the Court therefore concludes that the evidence presented is insufficient to warrant granting relief pursuant to Rule 60(b)(1), Fed.R.Civ.P., from the Order Amending Confirmed Chapter 13 Plan.

██ USA also asserts that because Debtor's attorney had previously agreed that interest was to be paid on USA's claim, he is judicially estopped from taking a different position now. Preliminarily, the Court notes that it is not bound in this case to apply any rigid formulation of the doctrine. Judicial estoppel is an equitable concept, and therefore, its application is within this Court's sound discretion. *In Matter of Cassidy,* 892 F.2d 637, 642 (7th Cir.1990). Further, where federal law is involved, federal courts may look to common law or to the policies supporting the doctrine itself for guidance in establishing an appropriate formulation. *See e.g., Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); 1B J. Moore, *Federal Practice,* § 0.405[8], at 771 (1974).

██ As the Eleventh Circuit has noted, in a bankruptcy case, involving federal issues, this Court is free to apply a formulation of the judicial estoppel doctrine as it thinks proper. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1261 (11th Cir.1988). This Court thinks it proper to apply the doctrine commensurate with the policy interests which originally gave rise to the doctrine. *Id.* The policy interests are simply stated by the doctrine itself. The doctrine of judicial estoppel "is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings[,]" *Johnson Service Co. v. Transamerica Insurance Co.,* 485 F.2d 164, 174 (5th Cir.1973), "[and] is designed to prevent parties from making a mockery of justice by [these] inconsistent pleadings." *McKinnon v. Blue Cross & Blue Shield of Ala.,* 935 F.2d 1187, 1192 (11th Cir.1991) (quoting *American National Bank v. Federal Deposit Ins. Corp.,* 710 F.2d 1528, 1536 (11th Cir.1983)).

██ The factual posture of the instant action does not commend this Court to invoke the doctrine of judicial estoppel. First, USA offers only limited evidence in an attempt to show the calculations submitted by Debtor were inconsistent with his prior position, and merely asserts what it contends are the appropriate calculations. (USA's Ex. D). Sec-ond, the Court finds that an inconsistent position by Debtor is not directly inferable from the record. In fact, Debtor's attorney stated at the October 7, 1998, hearing, when asked by the Court whether there was disagreement with USA's position that the figures are incorrect: "I do not agree with that whatsoever." (Tr. 28). Further, when asked whether the figures presented to the Court were correct, Debtor's attorney answered: "I do, Your Honor. I stand by those figures, the calculations, and what the Court entered." (Tr. 28).

The next reason for finding USA's argument unavailing rests on the inappropriateness of the judicial estoppel doctrine to the instant situation. Debtor's conduct cannot be deemed "fast and loose" and did not involve "intentional self-contradiction" in an attempt to obtain an "unfair advantage in a forum provided for suitors seeking justice." *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987) (quoting *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir.1953)). We do not have such calculated scheming in this case. The evidence presented barely supports a showing of error by the Debtor, much less an outright attempt on his part to abuse an impartial forum. Therefore, the record as a whole indicates that judicial estoppel is not warranted in this case.

### CONCLUSION

After considering the evidence presented, the Court concludes that USA's Motion pursuant to Rule 9024, Fed.R.Bankr.P., and Rule 60(b)(1) and (b)(6), Fed.R.Civ.P., for Relief from Order Amending Confirmed Chapter 13 Plan dated January 23, 1998, is not well taken, and is thus denied. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.