**In re: Eunice Elizabeth STEWART, Debtor.**

**No. 96–2465–3P3.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 15, 2000.

Grace E. Robson, Miami, FL, for EMC Mortgage Corporation.

David J. Pinkston, Jacksonville, FL, for Eunice Elizabeth Stewart.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This case came before the Court upon EMC Mortgage Corporation's ("EMC") Motion for Relief from Order Confirming Chapter 13 Plan and for Allowance of Amended Proof of Claim and upon EMC's Motion to Determine Pre–Petition Arrearage, to Compel Debtor to Modify Chapter 13 Plan, and for Sanctions Against David J. Pinkston ("Debtor's Attorney"). The Court held a hearing on November 23, 1999. In lieu of oral closing argument, the Court directed the parties to submit proposed briefs and proposed findings of fact and conclusions of law. Upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On October 16, 1995 First Union Mortgage Company ("First Union"), holder of a note and mortgage secured by Debtor's residence, obtained a Final Summary Judgment of Foreclosure in Duval County Circuit Court. (EMC. Ex. 1.) Toni L. Kemmerle and Tammy N. Giroux ("Attorneys for First Union" collectively) represented First Union in the foreclosure case.

2. On December 18, 1995 First Union transferred its interest in the mortgage to UMLIC–EIGHT Corporation ("UMLIC") by assignment of mortgage.

3. On January 9, 1996 UMLIC sent a letter to J.W. Stewart, Debtor's non-debtor spouse ("Debtor's Spouse") indicating that First Union had assigned the mortgage to UMLIC. (EMC Composite Ex. 5.)

4. On March 26, 1996, despite the assignment to UMLIC, Tammy N. Giroux filed a Motion to Reschedule Foreclosure Sale in the foreclosure case. (Debtor Ex. 2.)

5. On March 28, 1996 UMLIC sent a letter which contained a payoff amount to Debtor's Spouse. (EMC Composite Ex. 5.)

6. On April 26, 1996 Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. (Doc. 1.)

7. September 16, 1996 was set as the deadline to file a proof of claim in the case. (Doc. 3.)

8. On Schedule D of her bankruptcy schedules Debtor listed First Union as the holder of a secured claim in the amount of $43,203.12. (Doc. 10.)

9. On April 29, 1996 Debtor's Attorney filed a Suggestion of Bankruptcy in the foreclosure case. (Debtor Ex. 3.)

10. Debtor filed a Chapter 13 plan on May 13, 1996 indicating a $17,106.53 arrearage owed to First Union which was to be paid as part of the plan. Additionally,

the plan provided for maintenance of Debtor's monthly mortgage payments of $450.76. Debtor's monthly plan payment was to be $906.00. (Doc. 7.)

11. On May 14, 1996 Debtor's Attorney sent a letter to Attorneys for First Union requesting the status of Debtor's account, including arrearage, as of the date of the filing of the petition. (Debtor Ex. 6.)

12. Debtor's Attorney testified that he did not receive a response to the letter. (November 23, 1999 Hr'g.)

13. On October 3, 1996 Debtor filed Amended Chapter 13 plan which provided for maintenance of Debtor's monthly payments of $450.76 but did not indicate an arrearage owed to First Union. Debtor's monthly plan payment was to be $586.00 (Doc. 12.)

14. First Union and Attorneys for First Union received all notices in the case. Neither First Union nor UMLIC filed a proof of claim in the case.

15. In response to the Chapter 13 Trustee's request, Debtor filed a proof of claim on behalf of First Union in the amount of $43,203.12 on January 27, 1997. The proof of claim indicated that there was no arrearage and that no judgment had been rendered on the claim. (EMC Ex. 4.)

16. On January 28, 1997 the Court held a confirmation hearing at which it confirmed Debtor's Amended Chapter 13 plan. (Doc. 25.) Neither First Union nor UMLIC objected to confirmation of Debtor's plan.

17. On March 21, 1997 UMLIC assigned its interest in the mortgage to EMC.

18. On March 26, 1997 the Court entered Order Confirming Chapter 13 plan. (Doc. 30.)

19. On April 14, 1998 Patrick J. Casey filed a notice of appearance in the case on behalf of EMC. (Doc. 32.)

20. On May 29, 1998 EMC filed "Amended Proof of Claim" which indicated a principal balance as of April 26, 1996 of $43,203.12, a pre-petition arrearage of $27,045.60, and bankruptcy attorney's fees and costs of $875.00.

21. On April 21, 1999 EMC filed Motion for Relief of Order Confirming Chapter 13 Plan and for Allowance of Amended Proof of Claim. (Doc. 33.)

22. On July 14, 1999 the Court held a hearing which it continued until August 19, 1999. (Doc. 40.)

23. The Court held a hearing on August 19, 1999 at which time it gave the parties fifteen days to file additional motions or briefs supporting their respective positions.

24. On September 2, 1999 EMC filed Motion for Extension of Time to File Additional Motion. (Doc. 45.)

25. On September 3, 1999 Debtor filed Memorandum of Law in Opposition to EMC's Motion for Relief of Order Confirming Chapter 13 Plan. (Doc. 46.)

26. On September 3, 1999 the Court entered Order Granting EMC's Motion for Extension of Time to File Additional Motion. (Doc. 47.)

27. On September 29, 1999 EMC filed Motion to Determine Pre–Petition Arrearage, to Compel Debtor to Modify Chapter 13 Plan, and for Sanctions Against Debtor's Attorney upon which the Court scheduled a November 23, 1999 hearing. (Doc. 48.)

28. On October 13, 1999 Debtor filed Motion to Strike EMC Mortgage Corporation's Motion to Determine Pre–Petition Arrearage, to Compel Debtor to Modify Chapter 13 Plan, and for Sanctions Against Debtor's Attorney. (Doc. 50.)

29. At the November 23, 1999 hearing the Court construed Debtor's Motion to Strike as a response. (Doc. 58.)

### CONCLUSIONS OF LAW

I. **Motion for Relief from Order Confirming Chapter 13 Plan and for Allowance of Amended Proof of Claim**

EMC framed its initial motion as a request for relief from order confirming

chapter 13 plan pursuant to Rule 9024, Federal Rule of Bankruptcy Procedure and Rule 60(b)(6), Federal Rule of Civil Procedure, and for allowance of amended proof of claim. In its motion EMC stated "[t]he confirmation order entered in this case admittedly binds all affected parties to its terms. However, the terms of the Order Confirming Chapter 13 Plan are unfairly prejudicial to secured creditor." (Doc. 33 at p. 3.) Additionally, EMC stated that the circumstances constitute good cause justifying relief from the operation of the confirmation order and for allowance of the amended proof of claim. However, in later pleadings, EMC abandoned its argument seeking relief from the Order Confirming Chapter 13 plan. "Secured creditor requested additional time to research Section 1330 and came to the conclusion that it did not have recourse pursuant to this section of the bankruptcy code ... The Motion clearly states the relief requested, and revocation of the confirmation order is not requested." (Doc. 53 at p. 3.) Accordingly, the Court will not address 11 U.S.C. § 1330 and will treat Motion for Relief from Order Confirming Chapter 13 Plan as withdrawn. However, because EMC does not explicitly abandon its argument concerning the filing of an amended proof of claim, the Court will address that portion of EMC's argument.[1]

## II. Applicability of Excusable Neglect to a Late Filed Proof of Claim in a Chapter 13 Case

EMC cites *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) for the proposition that bankruptcy courts are empowered to allow late proofs of claim on the basis of excusable neglect. Subdivision (b) of Bankruptcy Rule 9006 provides the circumstances under which a court may enlarge the time periods in a bankruptcy case. "Except as provided in paragraphs (2) and (3) of this subdivision, ... the court ... may at any time in its discretion ... permit the act to be done where the failure to act was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1). Paragraph 2 enumerates the bankruptcy rules for which enlargement is not permitted and paragraph 3, which includes Rule 3002(c), enumerates the bankruptcy rules for which enlargement of time is limited to the "extent and under the conditions stated in those rules." FED. R. BANKR. P. 9006(b)(3). With certain exceptions, none of which applies here, Rule 3002(c) Federal Rule of Bankruptcy Procedure sets forth the time by which an unsecured creditor must file a proof of claim in a Chapter 7, 12, or 13 case. "In a Chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or Chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first day set for the meeting of creditors called under § 341(a) of the Code ..." FED. R. BANKR. P. 3002(c). *Pioneer* made clear that Rule 3002(c) was excluded from the operation of the excusable neglect standard. *See* 507 U.S. at 389 n. 4, 113 S.Ct. 1489. Additionally, the Court stated "[b]y contrast, Rule 9006(b) does not make a similar exception for Rule 3003(c), which, as noted earlier, establishes

---

1. The Court notes that EMC filed an "Amended Proof of Claim" and a Memorandum, albeit with no supporting case law, in support of allowance of amended proof of claim. (Doc. 43.) The Court recently performed an exhaustive analysis of the distinction between an amended claim and the assertion of a new claim in a Chapter 11 case in *In re Marineland Ocean Resorts*, 242 B.R. 748 (Bankr. M.D.Fla.1999). "[T]o be within the scope of a permissible amendment the amended claim should not only be of the same nature as the original, but also reasonably within the amount to which the original claim provided notice." *Id.* at 754. The Court concludes that EMC's proof of claim is not reasonably within the amount to which the original claim provided notice and is thus not allowed as an amendment to the proof of claim filed by Debtor. The Court also finds that the equities weigh in favor Debtor. *Id.* at 755 (citation omitted). The Court must therefore decide whether EMC's claim is allowable as a late filed proof of claim on the basis of excusable neglect.

the time requirements for proofs of claim in Chapter 11 cases. Consequently, Rule 9006(b)(1) must be construed to govern the permissibility of late filings in Chapter 11 bankruptcies." *Id. See also Jones v. Arross,* 9 F.3d 79, 81 (10th Cir.1993) (holding that excusable neglect standard applies only in Chapter 11 cases). A bankruptcy court does not have the discretion to allow late filed claims in a Chapter 13 case. *In re Euston,* 120 B.R. 228, 230 (Bankr. M.D.Fla.1990); *In re Jones,* 154 B.R. 816, 818 (Bankr.M.D.Ga.1993); *In re Turner,* 157 B.R. 904, 910 (Bankr.N.D.Ala.1993).

 Rule 3002 does not address the filing of a proof of claim by a secured creditor. Although it is clear that a secured creditor is not required to file a proof of claim and may instead look to its lien for satisfaction of its claim, distributions pursuant to a chapter 13 plan are predicated upon the filing of a proof of claim. "If a Chapter 13 plan does not propose to modify a secured claim, then by virtue of Rule 3002(a) the secured creditor is not required to file a proof of claim and the lien will pass through bankruptcy unaffected. If, however, a plan does propose to modify a secured claim, by paying the creditor less than what the creditor believes is due, the secured creditor must file a timely proof of claim or it will be bound by the plan under Code section 1327(a)." *In re Dennis,* 230 B.R. 244, 252 (Bankr. D.N.J.1999). Debtor's plan proposed to pay EMC less than what it believes is due. First Union's failure to file a timely proof of claim binds EMC to Debtor's amended Chapter 13 Plan. The Court does not have the discretion to allow EMC's late filed claim on the basis of excusable neglect.

 Additionally, § 502 of the Bankruptcy Code disallows late claims in a Chapter 13 case. Section 502(b)(9) provides "... [T]he court ... shall allow such claim in such amount except to the extent that proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the

Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 502(b)(9) (West 2000). "If Congress intended tardily filed claims in Chapter 13 to be allowed, they too would have been excepted from § 502(b)(9) as were tardily filed claims under § 726(a)." *Dennis,* 230 B.R. at 249. Because this case is a Chapter 13 case, EMC's claim does not meet any of the exceptions to § 502(b)(9).

### III. Modification of Plan After Confirmation

 EMC urges the Court to compel Debtor to modify her Chapter 13 plan to provide for payment of the arrearages. Section 1329 of the Bankruptcy Code provides "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim-" 11 U.S.C. § 1329(a) (West 2000). EMC acknowledges that it does not fall within the provisions of § 1329, but nonetheless asserts that the Court has the power to compel Debtor to modify her Amended Chapter 13 Plan since "it is clear that her plan does not provide one penny of arrearage, let alone the $27,920.60 accurately reflected in the Amended Proof of Claim to be paid to Secured Creditor." (Doc. 48 at pp. 4–5.) EMC's concession that it does not fall within the purview of § 1329 is correct. The only entities with standing to seek modification of a confirmed Chapter 13 plan are the debtor, the trustee, and the holder of an unsecured claim. 11 U.S.C. § 1329 (West 2000); *In re Rosenthal,* 233 B.R. 815, 818 (Bankr. C.D.Ill.1999); *In re Hydorn,* 94 B.R. 608, 615 (Bankr.W.D.Mo.1988). EMC is not the holder of an unsecured claim. EMC's unsubstantiated suggestion that the Court has the power to compel Debtor to modify her plan because it fails to provide for any arrearage to EMC is without merit.

EMC's most recent memorandum predicates its argument upon the following: Debtor's omission of a pre-petition arrearage as established by a Final Judgment of

foreclosure violates 11 U.S.C. § 1322(b)(2) and constitutes an unreasonable delay that is prejudicial to creditors, and constitutes cause to dismiss the case pursuant to 11 U.S.C. § 1307(c)(1). EMC further contends that a Chapter 13 debtor is judicially estopped from denying the res judicata effect of a Summary Final Judgment entered in a state foreclosure action. Finally, EMC seeks sanctions against Debtor's Attorney. EMC contends that an experienced attorney who relies solely on a debtor's representations in filing an Amended Chapter 13 plan which eliminates a secured creditor's pre-petition arrearage is subject to sanctions pursuant to Rule 9011, Federal Rule of Bankruptcy Procedure.

## IV. 11 U.S.C. § 1322(b)(2)

EMC argues that as a mortgagee it is entitled to receive the amounts due and owing pursuant to a final summary judgment of foreclosure with statutory interest because anything less would violate 11 U.S.C. § 1322(b)(2). It is well settled that a creditor who fails to timely object to a proposed plan or appeal from a confirmation order cannot later attack a plan on the basis that one of its provisions is inconsistent with the Bankruptcy Code. *See Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1121 (9th Cir.1983); *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253 (10th Cir.1999); *Great Lakes Higher Educ. Corp. v Pardee (In re Pardee)*, 193 F.3d 1083 (9th Cir. 1999). *In re Chappell*, 984 F.2d 775, 782 (7th Cir.1993). *But see In re Escobedo*, 28 F.3d 34, 35 (7th Cir.1994) (holding that confirmed plan that did not provide for full payment of priority claim was "nugatory" and not res judicata.) A Chapter 13 plan's failure to comply with § 1322(b)(2) is a ground for a valid objection to or appeal from a confirmation order, but not a legitimate ground to attack a plan that was confirmed three years ago. All of the cases cited by EMC are procedurally valid objections to or appeals from confirmation orders and are therefore inapposite to the issue before the Court. EMC's belated argument is not a substitute for a timely objection to confirmation, is not well taken, and is not a sufficient basis for the Court to upset the Order of Confirmation.

## V. Judicial Estoppel

EMC argues that Debtor is judicially estopped from denying the effect of the Summary Judgment of Foreclosure entered in the state court. Judicial estoppel is a doctrine "directed against those who would attempt to manipulate the court system through calculated assertion of divergent sworn positions in judicial proceedings[,]" "[and] is designed to prevent parties from making a mockery of justice by [these] inconsistent pleadings." *In re Norris*, 228 B.R. 27, 33 (Bankr.M.D.Fla. 1998) (quoting *Johnson Serv. Co. v. Transamerica Ins. Co.* and *McKinnon v. Blue Cross & Blue Shield of Ala.* (internal quotations and citations omitted)). EMC contends that Debtor and Debtor's Attorney filed inconsistent sworn statements, that both knew of the entry of the judgment, and that the sole reason for the amendment to the plan was to eliminate the provision for payment of the arrearages. EMC also points out that correspondence indicating First Union, and then UMLIC's assignment of the mortgage was sent to Debtor's address, and that, at the request of Debtor's Spouse, UMLIC sent a payoff figure to Debtor's address only eighteen days prior to the filing of the petition. EMC argues that it is unlikely that Debtor and Debtor's Spouse discussed the foreclosure proceedings but not the assignments of the mortgage or the payoff figures. The Court finds credible Debtor's testimony that she was unaware that First Union had assigned the mortgage until Patrick J. Casey filed a notice of appearance in the case on behalf of EMC in April of 1998. As Debtor points out, First Union and Attorneys for First Union were listed as creditors in Debtor's schedules and received all notices in the case. Additionally, Debtor's Attorney filed a Suggestion of Bankruptcy in the foreclosure case. The proof of claim Debtor filed on behalf of First Union, at the request of the Trustee, was for the amount of the principal bal-

ance owing at that time. The Court concludes that the inconsistency between Debtor's Chapter 13 Plan and Debtor's Amended Chapter 13 Plan was borne of confusion and misunderstanding rather than calculating scheming and therefore, does not compel the invocation of judicial estoppel.

## VI. 11 U.S.C. § 1307(c)(1)

■ EMC argues that Debtor's non-payment of the pre-petition arrearage is an unreasonable delay that is prejudicial to creditors and constitutes cause sufficient to justify dismissal pursuant to 11 U.S.C. § 1307(c)(1).[2] EMC contends that "it goes against the purpose of the provisions of the Bankruptcy Code to allow a debtor to have the benefit of the automatic stay imposed against a mortgagee who obtained a Final Judgment while making no payments or provisions in her Chapter 13 Plan to cure the pre-petition arrearage." (Doc. 62 at p. 10.) EMC's argument is entirely unavailing, especially in light of the fact that it first filed a notice of appearance in the case in April of 1998, over one year after the account had been assigned to it and filed a motion for relief from Order confirming Chapter 13 plan in April of 1999, more than one year after it filed a notice of appearance. EMC's inability to collect the pre-petition arrearage owed it during the pendency of the plan is a delay precipitated by First Union's failure to file its own proof of claim and to participate in Debtor's case, not by any action taken by Debtor. The plan's failure to provide for payment of the pre-petition arrearage does not constitute cause to justify dismissal of the case pursuant to § 1307(c)(1).

**2.** Section 1307(c)(1) provides that "... [T]he court ... may dismiss a case under this chapter ... for cause, including(1) unreasonable delay by the debtor that is prejudicial to creditors;" 11 U.S.C. § 1307(c)(1) (West 2000).

**3.** Rule 9011 provides in relevant part:
(b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party

## VII. Sanctions against Debtor's Attorney

■ EMC requests the imposition of sanctions against Debtor's Attorney pursuant to Rule 9011, Federal Rule of Bankruptcy Procedure.[3] EMC asserts that Debtor's Attorney's knowledge that a state court mortgage foreclosure judgment had been entered against Debtor should have alerted him that there was an arrearage because "such judgments typically do not get entered unless it is proven that mortgage arrearages exist." (Doc. 62 at p. 14.) EMC also contends that Debtor's Attorney's reliance on Debtor's representation that there was no arrearage does not constitute the "best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." (Doc. 62 at p. 15.) EMC asserts that Debtor's Attorney's May 14, 1996 letter to Attorneys for First Union is an insufficient independent investigation in light of the fact that the account had been assigned to UMLIC.

■ A court considering the imposition of sanctions pursuant to Rule 9011 must determine: 1) whether, based on the facts and law available to the signer at the time the document was filed or served, the attorney or signing party made a reasonable inquiry to determine the factual and legal legitimacy of the document; and 2) whether the attorney or signing party interposed the document for any improper purpose. *See In re Olympia Holding Corp.*, 189 B.R. 846, 851 (Bankr.M.D.Fla. 1995) (citing *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir.1995)). The Court must

is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
Fed. R. Bankr. P. 9011(b)(3).

apply an objective standard. *Id.* (citing *In re Kearney*, 121 B.R. 642, 646 (Bankr. M.D.Fla.1990)); *In re Jerrels*, 133 B.R. 161, 164 (Bankr.M.D.Fla.1991). Such a standard requires the Court to "go beyond the mere assertions of good faith and determine instead whether a reasonable person would have taken the actions taken by the attorney in a particular case." *In re Malmen*, 140 B.R. 819, 824 (Bankr. M.D.Fla.1992). A minimal factual inquiry may result in the imposition of sanctions. *In re Murray Indus.*, 121 B.R. 908, 910 (Bankr.M.D.Fla.1990).

The Court concludes that Debtor's Attorney, based on the facts available to him at the time he filed Debtor's Amended Chapter 13 Plan and the proof of claim on behalf of First Union, made a reasonable inquiry to determine whether or not there was a mortgage arrearage. EMC's contention that Debtor's Attorney's experience should have alerted him to the existence of arrearages is undercut by the fact that he received no response to his May 14, 1996 letter to Attorneys for First Union requesting the status of the account and the amount of any arrearage. EMC asserts that Debtor's Attorney should have taken steps in the foreclosure case if he disputed the existence of a mortgage arrearage. Debtor's Attorney took the appropriate step in the foreclosure case; he filed a Suggestion of Bankruptcy. Debtor's Attorney did not represent Debtor in the foreclosure case. EMC also points out that Attorneys for First Union were not responsible for providing information on a mortgage account for UMLIC, a company they did not represent. However, there is no evidence that Debtor's Attorney was aware that First Union had assigned the account to UMLIC when he wrote the letter. In fact, the court docket in the foreclosure case indicates that Tammy N. Giroux filed Motion to Reschedule Foreclosure Sale on March 26, 1996, more than three months after the assignment to UMLIC. If Attorneys for First Union were unaware of the assignment of the mortgage, Debtor's Attorney could not be expected to have had such knowledge.

Debtor's Attorney's reliance on Debtor's representation that there was no mortgage arrearage coupled with the failure of both First Union and its assignee to respond to his letter regarding the existence of a mortgage arrearage is sufficient for the Court to conclude that Debtor's Attorney made a reasonable inquiry to determine the existence of an arrearage, and that the imposition of sanctions is not warranted.

### *CONCLUSION*

The Court will treat EMC's Motion for Relief from Order Confirming Chapter 13 plan as withdrawn. The Court will deny EMC's Motion for Allowance of Amended Proof of Claim and EMC's Motion to Determine Pre–Petition Arrearage, to Compel Debtor to Modify Chapter 13 Plan, and for Sanctions Against Debtor's Attorney. EMC is bound by Debtor's Confirmed Chapter 13 Plan and during the pendency of the plan will receive only what the plan provides for it. A separate Order consistent with these Findings of Fact and Conclusions of Law will be entered.