CUMMINGS, Chief Judge.
 

 This is an appeal from the district court’s reversal of a November 10,1983, bankruptcy court decision to declare void a 1973 judicial sale of a patent in bankruptcy. The trustee argues that the bankruptcy court’s November 10, 1983, decision should be reinstated because relief from the 1973 confirming order is authorized by Fed.R. Civ.P. 60(b)(4) and (6). For the reasons set forth below, we affirm the decision of the district court.
 

 I
 

 The proceeding to vacate the March 13, 1973, bankruptcy court order confirming the sale of the patent at issue to Albert E. Sloan was instituted in 1982 by former trustee Avrum Dannen for the bankrupt estate of Whitney-Forbes, Inc. (“Whitney-Forbes”). David Coar subsequently was substituted as the trustee. Sloan was the president of Whitney-Forbes at the time of the initial bankruptcy proceedings and in late 1972 he sought to purchase from the bankruptcy estate certain litigation and U.S. Patent No. 3,455,507 (“patent 507” or “the 507 patent”). Trustee Dannen filed an application for leave to sell five causes of action in February of 1973 and notice of their proposed sale was issued to creditors. The 507 patent was not listed in the notice. The order authorizing the sale of the causes of action, however, expressly listed the 507 patent. The order was drafted by Dannen, presented in open court on March 13, 1973, and signed by Bankruptcy Judge Toles. No discussion regarding the patent occurred at the March 13 hearing and all the assets were sold for $250.
 
 [1]
 

 There is conflict in the testimony given by Sloan, Dannen and the bankrupt’s attorney, Mr. James Nachman, in the instant bankruptcy court proceedings, regarding how the 507 patent found its way into the March 13 order. Dannen stated that Nach-man requested him to include the patent in the order, while Sloan testified that he did not speak to Dannen regarding the patent but did request Nachman to procure the asset for him. Nachman testified, how
 
 *695
 
 ever, that he never discussed the patent with Sloan or Dannen and had no idea how it came to be included in the March 13 order. (Tr. 8/22/83, pp. 70-72, 151-153; Tr. 9/19/83, p. 155.) On May 6, 1974, Dannen executed an assignment of the patent, transferring it to Sloan. There is testimony from Dannen, Sloan and the inventor of the patent, Frans Brouwer, that as an unlicensed patent, the 507 patent in 1973 had little or no value, worth at most $250 to $500. (Tr. 8/22/83, p. 186; Tr. 9/19/83, pp. 187, 193.) Several attempts to license the patent and market the underlying invention (a spray-paint gun) had failed (Tr. 9/19/83, pp. 177-220).
 

 In the years following the sale, Sloan, Brouwer and others invested substantial time and money to develop and market a spray-paint gun invention, leading to a second patent and, after unsuccessful attempts, a patent licensing and marketing agreement in 1976 with Graco, Inc. Production of a spray-paint gun began two years later based in part on the 507 patent. A dispute between Graco and Sloan arose which culminated in litigation in 1981 and apparently sparked the instant proceedings. In July of 1982 Dannen succeeded in having Bankruptcy Judge Toles reopen the Whitney-Forbes bankruptcy and substituted trustee Coar then petitioned the bankruptcy court to set aside the 1973 confirmed sale of the 507 patent on the ground of fraud by a party and fraud on the court (7/30/82 Application ¶ 13; Tr. 8/22/83, p. 36). The case was subsequently reassigned to Bankruptcy Judge Merrick.
 

 Following a trial Bankruptcy Judge Merrick issued an Opinion and Order of November 10, 1983, which relied exclusively on Fed.R.Civ.P. 60(b)(4) to declare the March 13, 1973, order void with respect to the sale of patent 507. From the testimony presented to the court and its review of the circumstances surrounding the March 13, 1973, sale, the court made the following findings regarding the suspicious inclusion of the 507 patent:
 

 (1)that intentionally he [Sloan] concealed the existence of patent 507 so that he would not have to bid for it competitively in the event of a liquidation, nor have to bargain with creditors on the basis of it in establishing the terms of a plan of reorganization;
 

 (2) that Sloan negotiated with Dannen to have the patent transferred to Sloan in a manner which would avoid public participation or competition; and;
 

 (3) that at some point Sloan and Dannen devised an explanation of events which would describe them as being innocent and unaware and would cause the moving party in the scheme of transfer to appear to have been James Nachman.
 

 (11/10/83 Order at 32). The court explained that the case essentially involved “collusion between two persons who have fiduciary relationships to the Court and to other parties to the proceeding,” but also noted the irregularities of nondisclosure of assets, lack of notice to creditors of a sale of assets and a sale of assets below market value (11/10/83 Order at 33). The court, however, specifically found in its subsequent Opinion and Order of January 6, 1984, that there was no evidence to suggest fraud in the case and clarified that the November 10, 1983, Opinion did not suggest fraud (11/6/84 Order at 16). Finally, the bankruptcy court held that there was no evidence enabling it to determine the value of the patent on March 13, 1973.
 

 Sloan appealed the decision to the district court which then reversed the bankruptcy court on June 4, 1984, ruling that as a matter of law the March 13, 1973, sale of the 507 patent was not void within the meaning of Fed.R.Civ.P. 60(b)(4). Judge Kocoras additionally found that the equities in the case, including the extraordinary delay in challenging the sale, did not support a vacating of the sale. The trustee appeals.
 

 II
 

 As this Court has recently held, the decision of a court to set aside a confirmed judicial sale in bankruptcy is an extraordinary one and may be permitted only in
 
 *696
 
 limited circumstances. See
 
 Matter of Chung King, Inc.,
 
 753 F.2d 547, 549 (7th Cir.1985). The relevant standard governing the vacating of a judicial sale in bankruptcy is provided by Bankruptcy Rule 9024
 
 [2]
 
 entitled “Relief from Judgment or Order,” which makes Rule 60, Fed.R. Civ.P.,
 
 [3]
 
 applicable to bankruptcy cases, except in limited circumstances not applicable here. 4B CollieR’s Bankruptcy II 70.98, p. 1183 (14th ed. 1978).
 

 Rule 60(b), Fed.R.Civ.P., lists six reasons justifying a court in relieving a party of a judgment, order or proceeding. As noted, the bankruptcy court expressly based its decision to vacate on Rule 60(b)(4) which allows relief where “the judgment is void.” The district court was entirely correct in ruling that Rule 60(b)(4) cannot provide a basis for relief under these circumstances. It is clear that relief under Rule 60(b)(4) is granted only in “exceptional circumstances,”
 
 C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,
 
 726 F.2d 1202, 1205 (7th Cir.1984). The rule “is construed very narrowly and a judgment is normally void only if the rendering court lacked either subject matter jurisdiction or jurisdiction over the parties.”
 
 Planet Corp. v. Sullivan,
 
 702 F.2d 123, 125 n. 2 (7th Cir.1983). The power of the bankruptcy court in 1973 to confirm the sale of the 507 patent has not been contested. Even gross errors committed by a court in reaching a decision do not render the court’s judgment or order void. See
 
 In re Texlon Corp.,
 
 596 F.2d 1092, 1099 (2d Cir.1979). But an order may be void if the issuing court acted in a manner inconsistent with due process of law, see 11 C. WRIGHT & A. Miller Federal PRACTICE & PROCEDURE § 2862, p. 200 (1973), or where the court’s
 
 *697
 
 action involved a “ ‘plain usurpation of power.’ ”
 
 Margoles v. Johns,
 
 660 F.2d 291, 295 (7th Cir.1981), certiorari denied, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (quoting
 
 V.T.A., Inc. v. Airco Inc.,
 
 597 F.2d 220, 224-225 (10th Cir.1979). The trustee points to no case holding that lack of notice of a bankruptcy sale violates due process nor does it appear that due process considerations are apposite in this case. The bankruptcy court’s action in 1973 authorizing the sale of the 507 patent at worst amounts to benign neglect and not any intentional usurpation of power.
 

 Our review does not end here, however, since it does not appear that the trustee specifically or exclusively requested relief in the bankruptcy court under Fed.R.Civ.P. 60(b)(4). See
 
 supra
 
 p. 695. Before this Court the trustee appears to argue (with less than remarkable clarity) that wholly apart from any Rule 60(b)(4) argument the bankruptcy court decision to vacate should be reinstated due to the existence of fraud or wrongful conduct by a party (Reply Br. 9, Br. 27) or because of fraud on the court (Br. 28-29). Much of the authority cited by the trustee relates to pre-Bankruptcy Rule 924 caselaw, which, as noted in
 
 Chung King,
 
 753 F.2d at 550, is largely consistent with Fed.R.Civ.P. 60(b) and allows a confirmed sale to be overturned in the presence of fraud, error, or similar defect where compelling equities outweigh the interests in finality of judicial sales. See 753 F.2d at 550. In an ordinary situation the trustee would appear to have a sound argument to support the vacating of the sale here since the lack of notice present in this case is the factor most often relied upon to justify the setting aside of a confirmed sale. See
 
 id.
 
 at 551. This is not an ordinary situation, however, in view of the nearly ten years that have passed since confirmation of the sale. As noted by the district court, the long delay of the trustee in presenting his claim is relevant to the pre-Rule 924 “compelling equities” inquiry (see,
 
 e.g., In re Cada Investments,
 
 664 F.2d 1158, 1163 (9th Cir.1981); district court opinion at 6-7), but in light of Rule 9024 it is more appropriate to address the delay issue by direct reference to Fed.R. Civ.P. 60(b).
 

 The trustee on appeal appears to characterize his action as a request for relief from an order by motion under Fed. R.Civ.P. 60(b). It is clear that the bankruptcy court so interpreted it. In view of the bankruptcy court’s findings regarding Sloan’s behavior,
 
 supra
 
 p. 695, which would appear to raise an issue under Rule 60(b)(3) “fraud * * *, misrepresentation, or other misconduct of an adverse party”), the court’s attempt to fit these facts under the clearly inapplicable void judgment Rule 60(b)(4) is perhaps explained by the court’s recognition (11/10/83 Order at 35) that any claim based on Rule 60(b)(3) would be untimely because of the requirement of Fed. R.Civ.P. 60(b) that Rule 60(b)(1), (2) and (3) motions be made “not more than one year after the judgment, order, or proceeding was entered or taken.”
 
 Supra
 
 note 3. It is interesting to note that the one-year limitations period set forth in Fed.R.Civ.P. 60(b) arguably may not have been applicable to this case since Bankruptcy Rule 924, which first made the limitations periods applicable to bankruptcy proceedings, did not become effective until October 1 of 1973, whereas the bankruptcy court’s order confirming the sale of the 507 patent was entered in March of 1973. It is by no means certain, however, that the Rule 60(b) specific time limitations were not in force prior to October 1, 1973. See 4 C. Wright & A. Miller,
 
 supra,
 
 at § 1016, p. 88. It is in any event clear that any motion under Rule 60(b), except for Rule 60(b)(4) (see
 
 Taft v. Donellan Jerome, Inc.,
 
 407 F.2d 807 (7th Cir.1969)), must be made within a reasonable time, and it is fair to say that such a requirement applied in bankruptcy prior to 1973. See
 
 supra
 
 note 2; 11 C. Wright & A. Miller,
 
 supra,
 
 at § 2866, pp. 228-231.
 

 Relevant to the inquiry of reasonable timeliness here is prejudice to the party opposing the motion, see
 
 Jackson v. Jackson,
 
 276 F.2d 501 (D.C.Cir.1960), certiorari denied, 364 U.S. 849, 81 S.Ct. 94, 5
 
 *698
 
 L.Ed.2d 73, and more importantly the basis for the moving party’s delay. See
 
 Smith v. Security Mutual Casualty Co. v. Century Casualty Co.,
 
 621 F.2d 1062, 1068 (10th Cir.1980);
 
 Central Operating Co. v. Utility Workers of America, AFL-CIO,
 
 491 F.2d 245, 252-53 (4th Cir.1974). Here both of these concerns lead us to conclude that the delay in this case was unreasonable and that the bankruptcy court’s decision to vacate the March 1973 order approving the sale of the 507 patent was erroneous. First, as the district court pointed out, the order confirming this sale was presented, signed and docketed in open court. See
 
 supra
 
 p. 2. Although in view of the circumstances none of the creditors could have been expected to anticipate the transfer of the 507 patent, we do not think it unfair to place a duty on all interested parties to scrutinize final and binding orders confirming sales of assets of the bankrupt. Furthermore, the trustee and the creditors were put on inquiry notice between 1976 and 1978 that the former president of the bankrupt was in possession of an asset of the estate. As noted,
 
 supra
 
 p. 3, Sloan entered a patent licensing and marketing agreement with Graco, Inc. in 1976 and began production of a spray-paint gun based in part on the patent in 1978. Sloan also spoke publicly in an interview in early 1978 with a marketing journal about his acquisition of the 507 patent from the estate (Br. 7). It was not until four years later that the petitions to reopen and vacate were filed. There is no evidence that Sloan attempted to conceal his activities. The delay involved was unjustified, if not from its inception, certainly from the time Sloan publicly marketed the invention.
 

 The prejudice caused by the delay in this ease is substantial. It is not contested that a great deal of effort was put forth to refine the patent and market the resulting invention — effort that Sloan and others might not have put forth if they had known they would have to share in the benefits of their toil. With some diligence on the part of the trustee or the creditors, a fair resolution of the problem could have been reached at an earlier time. The delay in the present case was not reasonable and any motions under Rule 60(b) (except 60(b)(4)) were untimely.
 
 [4]
 

 If we were to view the trustee’s petition as an attempt to bring an independent action for relief from the 1973 order (as is expressly permitted by Rule 60(b),
 
 supra
 
 note 3), our conclusion would be no different. The doctrine of laches applies to such actions, see
 
 Simons v. United States,
 
 452 F.2d 1110 (2d Cir.1971);
 
 Lockwood v. Bowles,
 
 46 F.R.D. 625 (D.D.C.1969); 11 C. Wright & A. Miller,
 
 supra,
 
 at § 2868, p. 241, and the undue delay outlined above in the present case would amply support a finding of laches.
 

 Finally, the trustee’s indirect allegations of fraud on the court must be rejected. Fed.R.Civ.P. 60(b) expressly provides that it does not limit the power of a court to set aside a judgment or order for fraud upon the court. Actions to set aside a judgment for fraud on the court are not barred by laches. 11 C. Wright & A. Miller,
 
 supra,
 
 at § 2870, p. 250. Fraud on the court involves a particular type of fraud which is “directed to the judicial machinery itself,”
 
 Bulloch v. United States,
 
 721 F.2d 713, 718 (10th Cir.1983), and which involves circumstances where the impartial functions of the court have been directly corrupted. 11 C. Wright & A. Miller,
 
 supra,
 
 at § 2870, p. 254. The cases where it has been found have involved the most egregious conduct involving “ ‘corruption of the judicial process itself,’ ”
 
 id.
 
 at § 2870, p. 255 (quoting
 
 Lockwood v. Bowles,
 
 46 F.R.D. at 632), such as bribery of a judge and improper influence with the court. 11 C. Wright & A. Miller,
 
 supra,
 
 at.§ 2870, p. 255.
 

 Even assuming that the actions of Sloan and Dannen implicate this particular type of fraud, the bankruptcy court’s find
 
 *699
 
 ings of collusion,
 
 supra
 
 p. 4, on their own terms do not purport to meet the requisite clear and convincing standard, see
 
 DiVito v. Fidelity & Deposit Co.,
 
 361 F.2d 936, 939 (7th Cir.1966);
 
 Kenner v. Commissioner,
 
 387 F.2d 689, 691 (7th Cir.1968), certiorari denied, 393 U.S. 841, but indicate at best utilization of a preponderance of the evidence test (11/10/83 Order at 31). The court also expressly stated that it did not find fraud and that no evidence was introduced to suggest fraud of any type (1/6/84 Order at 16-17). Under these circumstances a finding of fraud on the court would not be appropriate, and we think the bankruptcy court implicitly so held. Consequently, we rule that any valid claims of the trustee to set aside the March 1973 sale are either untimely or unsupported by the evidence.
 

 The decision of the district court is affirmed.
 

 [1]
 

 . There is a dispute among the parties as to whom the order was circulated; although there is evidence that it was circulated to "all parties in interest” (Tr. 8/22/83 at pp. 191-192, Ex. 5 at 13), the trustee claims that the order was circulated only to the attorneys of Whitney-Forbes, whereas Sloan argues that it was distributed to the creditors' committee (o>-al argument).
 

 [2]
 

 . Rule 9024, promulgated as part of the new Bankruptcy Rules, effective August 1, 1983, states:
 

 Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144 or § 1330.
 

 See 11 U.S.C.A. Rule 9024 (1984).
 

 The Rule originally was issued as Rule 924, effective October 1, 1973, and stated:
 

 Rule 60 of the Federal Rules of Civil Procedure applies in bankruptcy cases, except that a motion to reopen a case or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one-year limitation herein prescribed. This rule does not permit extension of the time allowed by § 15 of the Act for the filing of a complaint to revoke a discharge.
 

 See 11 U.S.C. Appendix — Bankruptcy Rules, Rule 924 (1976).
 

 The Notes of the Advisory Committee recognized the uncertainty over the applicability of part (b) of Rule 60 in bankruptcy proceedings and clarified that the limitations prescribed by Rule 60(b) regarding the availability of relief by motion from a judgment or order are controlling in bankruptcy cases. See 11 U.S.C. Appendix — Bankruptcy Rules, Rule 924 (1976).
 

 [3]
 

 . Rule 60, Fed.R.Civ.P. provides in pertinent part:
 

 ******
 

 (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. * * * This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, * * * or to set aside a judgment for fraud upon the court. * * * [A]ny relief from a judgment shall be by motion as prescribed in these rules or by an independent action.
 

 [4]
 

 . Thus the trustee’s argument that Fed.R.Civ.P. 60(b)(6) justifies the bankruptcy court’s decision also must fail.