In re NWFX, INC.; Northwest Financial Express, Inc.; and Gold Financial Express, Inc., Debtors.

Larry Shaffer, Equity Security Holder of Debtors herein, Petitioner,

v.

City National Bank and its successor, BancorpSouth, Respondent.

No. 86–15148.

United States Bankruptcy Court, W.D. Arkansas, Fayetteville Division.

March 25, 2008.

Curtis E. Hogue, Hall Estill Law Firm, Erwin L. Davis, Attorney at Law, Michael C. Lea, Pearson Law Firm, Fayetteville, AR, Steven W. Soule, Thomas A. Creekmore, Hall, Estill, Hardwick Law Firm, Tulsa, OK, James E. Smith, Jr., Attorney at Law, Little Rock, AR, for Debtors.

## MEMORANDUM OPINION

RICHARD D. TAYLOR, Bankruptcy Judge.

Before the Court is Larry Shaffer's Petition to Vacate Order Approving Compromise Settlement and Setting Claim of CNB for Hearing [the Petition] and the answer filed by BancorpSouth Bank, successor to City National Bank of Ft. Smith [collectively CNB]. The Court conducted a hearing on October 19, 2007, and January 16 and 17, 2008, and took the matter under advisement. The parties concluded their post-trial briefing schedule on March 14, 2008. For the reasons stated herein, the relief sought in the Petition is denied. Commensurately, the Court will issue an order to show cause why this consolidated bankruptcy proceeding should not be closed.

## Jurisdiction

This Court has jurisdiction over this matter pursuant 28 U.S.C. §§ 157(a) and 1334, and this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

## Introduction

From their main offices in northwest Arkansas, the debtor entities, NWFX, Inc., Northwest Financial Express, Inc., and Gold Financial Express, Inc. [collectively NWFX], operated a money order business serving a number of states and Puerto Rico. At all pertinent times, Shaffer has been NWFX's sole owner.

In support of its money order operations, NWFX and CNB, in 1985, entered into a contractual relationship. The complexities of this relationship, which arguably precipitated NWFX's bankruptcy filing, are not necessarily relevant to this proceeding. Shaffer has continuously asserted that CNB breached the contract, as amended, which led to NWFX's demise. Conversely, CNB has consistently maintained that it suffered significant financial damage as a result of NWFX's contractual breach.

The contractual relationship involved CNB processing money orders issued in blank and retailed by various NWFX agents across the country. Unfortunately, the blank money orders were potentially negotiable items that in form represented direct obligations of CNB. The liability issue, coupled with the unanticipated—at least to CNB—volume of money orders, resulted in immediate fissures between

CNB and NWFX. The relationship quickly deteriorated into a series of accusations and recriminations concerning performance, amendments, referrals to regulatory bodies, and CNB's efforts in winding down the money order operations.

The NWFX entities filed voluntary Chapter 11 petitions on August 1, 1986. Atypically, NWFX filed a Motion for Appointment of Trustee, resulting in the appointment of Allen W. Bird, II as trustee on August 12, 1986. His appointment resulted in inordinate and unexpected consequences. On September 5, 1986, the cases were consolidated for administrative purposes. Seventeen years later, the case was closed on December 8, 2003, by entry of a Final Decree.

Thereafter, Shaffer, as NWFX's equity owner, filed his Motion to Reopen Case on February 24, 2006; the Court granted his motion on June 6, 2006. On January 26, 2007, Shaffer filed his Petition. Bancorp-South Bank, CNB's successor in interest,[1] filed a timely response [the Answer].

Two predominate themes arise from the Petition and the various court orders and opinions in this case. First, this bankruptcy case is characterized by the unique circumstance of a chapter 11 trustee, Bird, breaching his fiduciary duties to the estate, all interested parties, and the Court by misappropriating estate funds. Shaffer exposed Bird's defalcations when he successfully objected to Bird's final accounting. This Court, as well as at least one appellate court, has found that Bird's actions constituted fraud on the court. Second, Shaffer and CNB have had a long and contentious history,[2] the genesis of which lies in the contractual and financial relationships attendant to NWFX's money order business. In his Petition, Shaffer now conjoins these two themes and requests that this Court set aside a settlement concluded between CNB and NWFX, sponsored by Bird, and approved over Shaffer's objection.

**Facts**

On November 26, 1986, CNB filed a $1,508,035.00 claim in the NWFX bankruptcy. Bird objected to CNB's claim. Subsequently, believing that there would be insufficient funds to pay the CNB claim even if allowed, Bird moved to dismiss his objection. This resulted in a dismissal without prejudice on November 18, 1988.

Thereafter, an inability to locate many of the preferred money order claimants resulted in enough money in the NWFX estate to pay a significant part of CNB's claim; accordingly, Bird refiled his objection on October 29, 1996. Respondent's Exhibit C. By then, CNB had reduced its claim to $991,929.00. Because Bird had already abandoned any claims or causes of action the estate might have against CNB, the basis for his objection was an effort to isolate, document, and determine the exact amount of CNB's claim. Bird apparently operated under the assumption that the bank was indeed owed something; the question was simply how much.

Following discovery and a mediation process, Bird, by his motion filed September 26, 1997, proposed to settle CNB's claim for $500,000 [the Settlement]. Respondent's Exhibit E. Shaffer objected to

---

1. BancorpSouth Bank does not concede that it is amenable to successor liability but does term itself CNB's successor in both the title and opening paragraph of the Answer.

2. For simplicity sake, this opinion generically refers to CNB although BancorpSouth Bank is the responding party. The Court will distinguish BancorpSouth Bank from CNB as relates to the issue of whether BancorpSouth Bank is the proper party to this action, either individually or on the basis of successor liability.

the Settlement, and a hearing was conducted before this Court's predecessor, the Honorable Robert F. Fussell, on October 28, 1997 [the Settlement Hearing]. Judge Fussell, by his Memorandum Opinion of June 19, 1998 [the Settlement Order], approved the Settlement between Bird, acting as trustee, and CNB.

**The Petition**

Shaffer now contends that the Settlement Order was a product of fraud on the court and accordingly should be set aside. Specifically, the fraud on the court relates to Bird's embezzlement of estate funds, which may have rendered false or misleading certain statements that he made to the Court during the 1998 Settlement Hearing.

The entirety of Bird's misconduct became evident and conclusive with Judge Fussell's Memorandum Opinion of June 22, 2001 [the Bird Opinion]. *In re NWFX, Inc.*, 267 B.R. 118 (Bankr.W.D.Ark.2001). Therein, Judge Fussell relieved Bird as trustee and disgorged Bird's $199,979.26 trustee fee "because of his performance in committing fraud upon the Debtor Corporations' estates and the Court." *Id.* at 255. Additionally, Judge Fussell ordered Bird's law firm to reimburse the estate for accumulated overpayments. Because there were residual funds existing in the NWFX estate in excess of allowed claims, this recovery enured to Shaffer's direct benefit.[3]

Shaffer now suggests a nexus between Bird's fraud on the court and the Settlement in the context of Bird's assertion, as characterized by Judge Fussell, that "[t]he Trustee testified that in his opinion if the Compromise Settlement is not approved, the trade creditors ... would be at risk of not receiving one hundred percent (100%)

of their claim and would be prejudiced." Petition at 4 (quoting Settlement Order); *see also* Respondent's Exhibit H at 98. In essence, Shaffer argues that Judge Fussell would not have approved the Settlement but for the representation that there were insufficient funds in the estate to pursue both the objection to CNB's claim—an expensive proposition—and to pay unsecured creditors. Absent his defalcations, Bird's assertion is arguably false, as sufficient funds for both purposes presumably would have existed in NWFX's estate. As stated in the Petition:

> [I]t is respectfully submitted that it is clear that if it had not been for Trustees Bird's fraudulent overpayment of fees to himself and his law firm, there would have been ample funds to cover the anticipated legal and administrative expenses to litigate CNB's claim and still pay the trade creditors in 100% of their claims.

Petition at 9.

In addition to the theory set forth in his Petition, Shaffer attempted at trial to articulate a second basis for setting aside the Settlement Order. This second theory suggests that two inevitable consequences flow from Bird's misappropriation of estate funds. First, Bird must have deliberately misrepresented to Judge Fussell certain weaknesses in CNB's claim. Second, the Court simply should not have trusted Bird's representations concerning the appropriateness of the Settlement.

**Authority**

 Federal Rule of Civil Procedure 60(b) provides that a court may "set aside

---

**3.** The Court recognizes that Shaffer could contend that these residual funds were diminished because of his costs in pursuing and bringing to the Court's attention the inaccuracies in Bird's final accounting. But this is a question of degree and does not alter this Court's substantive findings herein with respect to CNB and the Settlement.

a judgment for fraud upon the court." [4] "Fraud on the court" is defined as "a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." *Landscape Prop., Inc. v. Vogel*, 46 F.3d 1416, 1422 (8th Cir.1995) (internal quotation and citation omitted). The court's ability to entertain an action for fraud on the court "cannot be read to embrace any conduct of an adverse party of which the court disapproves; to do so would render meaningless the one-year limitation on motions under Fed.R.Civ.P. 60(b)(3)." [5] *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir.1972) (citing Moore, Federal Practices ¶ 60.33 at 511 (1971 ed.)). Therefore, an action for fraud on the court is distinguishable from the "more general fraud standard of Rule 60(b)(3)." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir.1998). Only the "most egregious misconduct directed to the court itself" justifies a finding of fraud on the court. *Landscape Prop.*, 46 F.3d at 1422 (internal

quotation and citation omitted). Examples of such egregious misconduct include the fabrication of evidence and bribery of a judge or jury. *Id.* (internal quotation and citation omitted). Because attorneys are officers of the court, dishonest conduct on their part "would constitute fraud on the court." *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir.1976); *see also Kupferman*, 459 F.2d at 1078 (same); *Pearson v. First NH Mortgage Corp.*, 200 F.3d 30, 38 (1st Cir. 1999) (same). A bankruptcy trustee is an officer of the court. *In re Michelson*, 141 B.R. 715, 727 (Bankr.E.D.Cal.1992).

An independent action for fraud on the court "should be available only to prevent a grave miscarriage of justice," *United States v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998), and "must be supported by clear, unequivocal[,] and convincing evidence." *Landscape Prop.*, 46 F.3d at 1422 (internal quotation and citation omitted). Because of the "universal interest in the finality of judgments," an action for fraud on the

**4.** Rule 60(b) states:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than

one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court.

**5.** "There is no time limit for [setting aside a judgment procured by fraud], nor does the doctrine of laches apply." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir.2002) (citing *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir.1985); 11 Wright & Miller § 2870, at 412; 12 Moore's § 60.21[4][g]); *see also In re Whitney–Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir.1985) ("Actions to set aside a judgment for fraud on the court are not barred by laches.").

court "is only permitted under unusual and exceptional circumstances." *In re Apex Int'l Mgmt. Serv., Inc.,* 215 B.R. 245, 249 (Bankr.M.D.Fla.1997).

■ To prove fraud on the court, the movant must establish that the officer of the court's misrepresentation or nondisclosure was *material* to the court's judgment. The court must determine whether the officer's fraudulent conduct "was likely to have made a difference to the outcome of the matter if it had been known." *Michelson,* 141 B.R. at 728; *see also, Apotex Corp. v. Merck & Co.,* 507 F.3d 1357, 1360 (Fed.Cir.2007) (stating that "[f]raud upon the court requires that there was a material subversion of the legal process such as could not have been exposed within the one-year window"); *Zakrzewski v. McDonough,* 490 F.3d 1264, 1267 (11th Cir.2007) (encouraging the district court, on remand, to consider whether counsel made a "material misrepresentation" to the court in determining whether a fraud on the court occurred); *State Street Bank & Trust Co. v. Inversiones Errazuriz,* No. 01 Civ. 3201(RLC), 2003 WL 1907955, at *1 (S.D.N.Y. April 18, 2003) (unpublished) ("[U]nless the allegedly concealed information was material to the determination made by the court, relief under Rule 60(b) will not lie."); *In re Leisure Corp.,* No. C–03–03012 RMW, 2007 WL 607696, at *7 (N.D.Cal. Feb.23, 2007) (unpublished) ("[T]he bankruptcy court clearly indicated that knowing the specific circumstances surrounding the Factoring Agreement would not have changed its opinion that the Settlement Agreement served the estate's interests. Because the non-disclosure of the Factoring Agreement was not material to the bankruptcy court's assessment of the Settlement Agreement ... [counsel's] alleged [failure to disclose the Factoring Agreement] cannot constitute fraud on the court.").

Thus, the aforementioned cases indicate that a relevant inquiry in the present case is whether the court would have approved the settlement had it known the undisclosed facts, i.e., whether the trustee's misrepresentations were "material" to the court's approval of the settlement. *Id.; cf. Drobny v. Comm'r of Internal Revenue,* 113 F.3d 670, 678 (7th Cir.1997) (stating that a taxpayer desiring to set aside a prior judgment of the Tax Court based on fraud on the court must "explain how the alleged conduct induced, caused, or had a material effect upon the [court's] decision").

■ Moreover, an action for fraud on the court pursuant to Rule 60(b)'s savings clause is "unavailable to a party whose situation is due to his own fault, neglect, or carelessness." *In re Apex,* 215 B.R. at 249 (citing *Winfield Assocs., Inc. v. Stonecipher,* 429 F.2d 1087, 1090 (10th Cir.1970)). " 'Where complainant's own negligence or oversight, however innocent, contributed to the original judgment, an independent action for relief is not proper unless the evidence which would establish injustice is 'practically conclusive.' " *Id.* (quoting *Booker v. Dugger,* 825 F.2d 281 (11th Cir.1987)); *see also Winfield,* 429 F.2d at 1090 (stating that relief based on fraud on the court is not available "if the complaining party 'has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action ... to open, vacate, modify or otherwise obtain relief against, the judgment' ") (quoting 49 C.J.S. Judgments § 343(a)). "Fraud upon the court requires that there was a material subversion of the legal process such as could not have been exposed within the one-year window...." *Apotex,* 507 F.3d at 1360. A fraud-on-the-court action must be brought "within a reasonable time of discovery of the fraud." *Id.* at 1361. Therefore, while

the doctrine of laches does not apply to an action for fraud on the court, "unexplained delays [by the movant] bear on the basic concept of the finality of judgments and the proof." *Bulloch*, 763 F.2d at 1121.

For example, in *Bulloch*, the plaintiffs originally brought an action in 1956 against the United States under the Tort Claims Act. *Id.* at 1116. Twenty-five years later, the plaintiffs filed an independent equity action to set the judgment aside based on fraud on the court. *Id.* On appeal, the Tenth Circuit noted that "[t]he plaintiffs [ ] have a heavy burden to demonstrate why they waited these many years to make the assertions they have made in this action." *Id.* at 1120. The court concluded that the plaintiffs "produced nothing to explain why they waited for 25 years to file this action and of more importance they have come forward with nothing of any consequence which was not available to them [in the original action]." *Id.* at 1120–21. The case evidenced "the very good reasons why judgment should be final and should not be disturbed." *Id.* at 1121.

Similarly, in *M.W. Zack Metal Co. v. International Navigation Corp. of Monrovia*, 675 F.2d 525 (2d Cir.1982), the plaintiff brought, *inter alia*, an action for fraud on the court 22 years after the matter was first litigated. *Id.* at 526. The plaintiff averred that the insurance companies in the prior litigation, through their attorneys, "defrauded the courts which had rendered decisions on [the plaintiff's claims] by misstating the law and withholding operative facts." *Id.* at 528. On appeal, the Second Circuit agreed with the district court that the plaintiff had adequate opportunity to raise the fraud issues in the courts in which they occurred. *Id.* According to the court, an action for fraud on the court may not be maintained if "there was an opportunity to have the ground

now relied upon to set aside the judgment fully litigated in the original action." *Id.* at 529 (internal quotations and citation omitted).

 Even if a court concludes "that a fraud was perpetrated upon [it], it is within its discretionary power to tailor an appropriate remedy in the first instance." *Pearson*, 200 F.3d at 42. For example, a court "may determine that it is not appropriate to disturb [a] compromise [settlement], but nonetheless invoke its inherent powers to sanction any person found to have perpetrated a fraud on the court." *Id.* at 42 n. 7 (determining that if the bankruptcy court decided that the debtor's attorney and debtor's law firm acted under a conflict of interest and engaged in fraud upon the court regarding a compromise settlement that the Chapter 7 trustee could have asserted against the bank, the court was nevertheless entitled to conclude that it was not appropriate to disturb the compromise).

## Analysis

### I. GENERAL

At issue is whether Bird obtained the 1998 Settlement Order by engaging in fraud on the court.

As previously stated, Shaffer posits two theories: (1) that Bird's representation that there were insufficient funds in the estate to both litigate the CNB claim and pay the unsecured creditors was false because Bird had embezzled estate funds and (2) that Bird deliberately misrepresented weaknesses in CNB's claim. Consequentially, under either theory, Shaffer argues the Settlement Order is the product of Bird's fraud on the court. The Court disagrees, concluding that the relief requested in the Petition is not appropriate. The following findings and conclusions compel

respect for and acceptance of the finality of the Settlement Order.

Denial of the requested relief is appropriate on four independent but complimentary bases. First, Judge Fussell's 2001 Bird Order specifically found that Bird's misapplication of estate funds constituted a fraud on the court; the district court opinion affirming Judge Fussell reached the same conclusion. But this finding does not necessarily dictate that Bird's every action as trustee resulted solely or materially from his fraud on the court. Bird's misrepresentations did not materially impair Judge Fussell's ability to adjudicate the Settlement, nor do these misrepresentations warrant setting aside the Settlement. In fact, other factors and considerations clearly existed that more than adequately justified Judge Fussell approving the Settlement on its own merits. This is evident from the Settlement Order itself and was later confirmed in the Bird Order when Judge Fussell commended the Settlement.

Second, to the extent that the Settlement Order was the product of fraud on the court, Judge Fussell in the 2001 Bird Order fully and directly redressed NWFX—and indirectly Shaffer as the equity beneficiary of the estate—for Bird's actions. Setting aside the Settlement at this juncture would serve to penalize only CNB, a party wholly innocent of any fraud on the court.

Third, Shaffer failed to meet his burden of proof in regard to his suggestion that Bird tried to suppress or minimize evidence. Bird's actions reflect an ordinary recognition of the vicissitudes of litigation in the context of typical strategy and settlement considerations.

Fourth, and tellingly, Shaffer did not take any action on the basis of fraud on the court until 2007, even though all of the relevant facts were known to him no later than the 2001 Bird Order. In that interim, Shaffer unsuccessfully pursued other remedies against CNB,[6] as well as his attorneys for their alleged malpractice with respect to his claims against CNB. Only after his efforts against CNB and his lawyers failed did he retrench and pursue setting aside the Settlement. This effort is directed at the *merits* of CNB's claim more so than the *merits* of the Settlement, an altogether different proposition.

## II. AVAILABILITY OF FUNDS IN THE ESTATE

As previously stated, NWFX filed its voluntary Chapter 11 petition on August 1, 1986. The debtor asked for the appointment of a trustee, resulting in Bird's August 12, 1986 appointment. The Settlement Order was entered on June 19, 1998. Respondent's Exhibit H. The Bird Order was entered on June 22, 2001. Thereafter, the NWFX case was closed on December 8, 2003. Shaffer filed his Motion to Reopen Case on February 24, 2006, which was granted by this Court's order of June 6, 2006. Shaffer filed his Petition on January 26, 2007.

In his Petition, Shaffer asserts that the Settlement Order "was the product of fraud practiced upon this Court" and accordingly that it should be set aside. Petition at ¶ 1. Shaffer advances the following factual predicate:

When it is considered that this Court approved the Compromise Settlement between Trustee Bird and CNB, based upon Trustee Bird's testimony that, "if the plan which he had proposed in the

---

**6.** Any cause of action NWFX had against CNB had been abandoned by the estate in March, 1993.

Debtors' case was confirmed, there would never be sufficient funds to pay CNB's claim, or the claims of any other unsecured creditors" (See page 27); and when it is considered that Trustee Bird testified that "... he anticipates that additional legal and administrative expenses to litigate and keep the estate open will likely be at an additional cost of two hundred thousand dollars ($200,-000) to the estate" (See 97); and when it is considered that this Court found that as a result of Trustee Bird's fraud upon the court Trustee Bird and the Rose Law Firm were overpaid in the amount of $232,886.50, ..., for a total overpayment of fees in the amount of $413,007.24, it is respectfully submitted that it is clear that if it had not been for Trustee Bird's fraudulent overpayment of fees to himself and his law firm, there would have been ample funds to cover the anticipated legal and administrative expenses to litigate CNB's claim and still pay the trade creditors 100% of their claims.

Petition at ¶ 9.

Notwithstanding this assertion, setting aside the Settlement Order on this basis is not appropriate. This conclusion is compelled by the first two reasons outlined above: (1) that the Settlement stood on its own merits and accordingly Bird's misrepresentations did not materially impair Judge Fussell's ability to consider the appropriateness of the Settlement and (2) that if it was the product of fraud on the court, Judge Fussell has already fully addressed and remedied Bird's fraud on the court in the Bird Order.

### A. Materiality

■ To the extent Bird made false representations or omissions concerning the availability of estate funds to both pay creditors and pursue the CNB litigation, those representations would have been in furtherance of, and a necessary concomitant to, concealing his ongoing embezzlement scheme. It does not necessarily follow that Bird, in making these representations, committed fraud on the court for the specific purpose of obtaining the Settlement's approval or that the Settlement did not on its own merits represent an appropriate resolution of CNB's claim. Bird's fraud on the court was for the single purpose of financially benefitting himself. Insufficient evidence exists that Bird made his misrepresentations for the sole, principle, or materially contributing purpose of gaining the Court's approval of the Settlement. Further, as discussed below, Judge Fussell in the Bird Order clearly established that Bird's financial misrepresentations did not materially impair his ability to impartially adjudicate the merits of the Settlement, and he accordingly tailored an appropriate remedy that left the Settlement fully intact.

A close review of the Settlement Order reflects an extensive analysis by Judge Fussell demonstrating a number of reasons why he considered the CNB litigation "resolve[d] successfully" even following the complete unmasking of Bird's defalcations. *NWFX*, 267 B.R. at 236. In considering the appropriateness and reasonableness of the Settlement over Shaffer's objection, Judge Fussell applied a standard of "whether the settlement is fair and equitable and in the best interests of the estate." Respondent's Exhibit H at 5. In applying that standard, Judge Fussell considered four factors:

(A) The probability of success in the litigation;

(B) The difficulties, if any, to be encountered in the matter of collection;

(C) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(D) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

(Respondent's Exhibit H at 6).

Judge Fussell's analysis of the probability-of-success-in-the-litigation standard weighed heavily in favor of the Settlement. Judge Fussell considered the collection factor only briefly as this was a claim against an available fund. Judge Fussell analyzed extensively the complexity of the litigation, the expense, inconvenience, and delay, and found that given the facts and circumstances, as affected by the issues presented, this factor also heavily favored the Settlement.

In assessing the paramount-interest-of-creditors test, Judge Fussell took into account the math offered by Bird. As suggested in the Petition now before this Court, absent Bird's misappropriations and overpayments, there would have existed sufficient funds in the estate to both pursue the objection to CNB's claim as well as pay the unsecured creditors, even if the objection was eventually unsuccessful. At first glance, this would appear to weigh in favor of this Court granting the relief sought in the Petition.

But this conclusion would ignore a number of factors and considerations that dictate the opposite result. Specifically, Shaffer has made no allegation that CNB directly or indirectly participated in any fraud on the court. The active participant, Bird, was eventually exposed when the Court determined that he committed fraud on the court in the context of duplicate trustee fee payments. Judge Fussell fashioned a remedy that enured to the benefit of the actual aggrieved parties— NWFX and Shaffer. Judge Fussell dictated this remedy in the Bird Order, which specifically—and significantly—commended the Settlement as a successful resolution. Apparently, Bird's fraud on the court did not interfere with Judge Fussell's ability to impartially adjudicate the matter before him, nor was the deception sufficiently material to warrant setting aside the Settlement. The Bird Order contains no inference, finding, or conclusion that Bird engaged in fraud on the court in the context of the Settlement Hearing. To set aside the Settlement Order herein would unfairly and unjustly penalize CNB, the innocent principal beneficiary of the Settlement.

Further, it is evident from the Settlement Order that the math was not the sole basis for Judge Fussell's finding that the Settlement was in the best interest of creditors and interested parties. Other material bases, when taken in conjunction with his consideration of the first three factors, existed with respect to this consideration. Judge Fussell noted that: (1) the trade creditors had been delayed over ten years in receiving payment; (2) if the objection were tried and appealed, they would be delayed approximately two more years; (3) significant legal and administrative expenses would continue to accrue; (4) CNB was unwilling to allow the trade creditors to be paid in the interim; (5) much of Shaffer's objection to the Settlement involved the merits of CNB's claim (a consideration Judge Fussell had already concluded weighed heavily in favor of CNB); and (6) Bird's projection of administrative and legal expenses, and distribution delays, were "substantially understated rather than overstated." Respondent's Exhibit H at 104. Clearly, it was time to conclude a case which by then was 12 years old. Judge Fussell's consideration and analysis of the other relevant factors alone could justify a balanced conclusion that the Settlement merited approval.

## B. Remedy

 Conversely, if Bird did make misrepresentations to Judge Fussell specifically for the purpose of obtaining approval of the Settlement, Judge Fussell has already tailored an appropriate and dispositive remedy. Additionally, the Court recognizes that if a fraud on the court occurred, it was *Bird's fraud, not CNB's fraud.*

In the conclusion section to the Bird Order, Judge Fussell specifically found, in addition to other enumerated misrepresentations and breaches of fiduciary duty, that:

> (9) Bird, as trustee, breached his fiduciary duty to the Debtor Corporations' estates, and committed fraud upon the Debtor Corporations' estates *and the Court,* by making application on June 25, 1992, obtaining an order on July 27, 1992, and receiving $88,000.00 in duplicate trustee's fees pursuant to 11 U.S.C. § 326. Further, Bird, as trustee, breached his fiduciary duty to the Debtor Corporations' estates, and committed fraud on the Debtor Corporations' estates *and the Court,* by paying himself or the Rose Law Firm $41,527.00 on October 29, 1992, when he obtained a second payment of state regulators' fees from funds of the Debtor Corporations' estates.

*NWFX,* 267 B.R. at 254 (footnote omitted) (emphasis added).

Judge Fussell then addressed and remedied Bird's fraud on the court:

> (14) The Court will disgorge Bird's trustee's fee in the Debtor Corporations' cases pursuant to 11 U.S.C. § 326 in its entirety because of his performance in committing fraud upon the Debtor Corporations' estates *and the Court.* Bird

is ordered to pay back to the Debtor Corporations' estate the sum of $199,979.26 for interim trustee fees paid.

*Id.* at 255.[7] (emphasis added)

Just as the First Circuit suggested in *Pearson,* Judge Fussell specifically tailored a remedy for Bird's defalcations with respect to the Court. Self-evident from the Bird Order was Judge Fussell's awareness and recollection of the CNB claims litigation and Settlement. In fact, Judge Fussell considered that litigation as one of the mitigating circumstances in response to Shaffer's then allegation of undue delay. Judge Fussell noted that the trustee had filed objections to numerous unsecured claims,

> including that of City National Bank, whose claim totaled $1,500,000.00. The years 1996 through 1998 were spent in extensive discovery and discovery disputes regarding the City National Bank claim. That claim was eventually settled for $500,000.00 through mediation, despite Shaffer's objection to the settlement.

*Id.* at 137.

Then, with evident recollection of the CNB claims litigation, and now cognizant of the full extent of Bird's defalcations, including fraud on the court, Judge Fussell noted with approval the manner in which Bird's law firm had resolved the CNB litigation, stating:

> The Rose Law Firm also handled the complex proof of claim filed by City National Bank of Fort Smith, Arkansas, which involved a claim of $1,500,000.00 and required extensive discovery. The claim took almost two years to resolve

---

7. Judge Fussell also penalized Bird for his fraud on the Court by not allowing him to

assess the estate for his legal fees in defending his final accounting. *Id.*

*successfully* in favor of the Debtor Corporations' estate.

*Id.* at 236 (emphasis added).

Bird's fraud on the court has been, post-entry of the Settlement Order, fully recognized and redressed by the same Court that entered the Settlement Order and ultimately commended the Settlement and left it intact. Shaffer has had his remedy.

Furthermore, no allegation or proof exists that CNB in any respect individually, or jointly with Bird, committed fraud on the court. Bird, by virtue of the 2001 Bird Order, has been fully sanctioned and penalized; Shaffer, as the equity owner and residual beneficiary of the estate, has been recompensed for Bird's defalcations. Setting aside the Settlement Order would harm only CNB, a party innocent of any cognizable fraud on the court. CNB would have to return $500,000 to the estate; it would then have to litigate its claim partially bereft of witnesses, documents, and institutional knowledge in a 20–year–old dispute and without the ability to recover full or substantial value in the event it is successful in asserting its claim, as the NWFX estate has been depleted.[8]

Typically, cases involving fraud on the court involve two parties, one of whom has, by fraudulent means directed specifically at the operation (or machinery) of justice itself, gained an advantage over his opponent. Additionally, the conduct rises to a level beyond mere fraud and is a path which attacks the fundamental integrity of the entire judicial process. Coincidently and integrally, the aggrieved litigant is relieved from the consequences of an adverse decision unfairly obtained. It is those circumstances which public policy and judicial fiat must and should address.

Here, the opposite would result. CNB, innocent of fraud on the court, properly promoted and benefitted from the Settlement. Unbeknownst to CNB, Bird engaged in fraud on the court; Shaffer, the party who objected to the Settlement, has effectively pursued his remedies against Bird. Judge Fussell has addressed and resolved the consequences of Bird's fraud on the court in a manner directly enuring to Shaffer's benefit. Penalizing CNB for concluding at arms-length an otherwise meritorious settlement is not the appropriate cure for Bird's defalcations.

### III. FAILURE TO DISCLOSE EVIDENCE

■ At trial, Shaffer argued that Bird deliberately misrepresented facts to Judge Fussell that would have diminished CNB's claim. Shaffer focuses on two areas of Bird's testimony—an internal CNB document and the role of Felix Hernandez, an NWFX employee and later a contracting party with CNB.

### A. Document

Shaffer contends that an internal CNB memo is contrary to Bird's following testimony at the Settlement Hearing:

Q: Let me ask you this, in the course of reviewing all of NWFX's records and preparing for this trial, was there any, you know, written evidence existing in favor of the Trustee, that would specifically indicate the bank is not owed a particular amount of money, or that— that you, as the Trustee, could use as affirmative evidence to prove a lesser amount owed?

A: No. I didn't have any records at my disposal, either under my control, or that I've discovered from others, that I

---

**8.** At the time of Bird's objection to CNB's claim, there were nearly sufficient funds in the estate to pay CNB's claim in full if CNB

had been the prevailing party. Those funds are no longer available.

could use to prove either an admission by the bank that it didn't owe anywhere near the nine hundred thousand dollars ($900,000), or I could otherwise prove that the bank wasn't owed anywhere near nine hundred thousand dollars ($900,000).

I was—I was simply relying on their records, rather than anything I had that I could produce.

Petitioner's Exhibit S1 at 51.

Shaffer now insists that Bird actually had at least one significant CNB document that constituted an admission of a substantially reduced claim. Shaffer refers to a June 1, 1990 memo from Jim Harwood, a CNB officer, to CNB's Board of Directors related to the NWFX money order situation [the CNB Memo]. Petitioner's Exhibit S–11.

For several reasons, Shaffer's contention is not supported by the record. First, insufficient evidence exists that Bird was even fully aware of the CNB Memo, a necessary predicate to a false representation about its substance and import. Second, the 1990 CNB Memo is a snapshot in time of the ongoing money order situation designed to address the issue of both known and potential liability in the context of insurance coverage. Third, a thorough examination of the CNB Memo reveals that it is not a conclusive analysis of CNB's exposure. Fourth, the one exact figure suggested as a baseline for loss analysis purposes is $565,731.70, a figure less than CNB's claim but more than the Settlement figure. Finally, Shaffer's hindsight analysis of the settlement process ignores the normal vicissitudes of litigation and the myriad of factors which frequently dictate when and why parties settle, even in light of conflicting evidence.

At the Petition hearing, Bird testified through his evidentiary deposition. He simply did not recall if he took depositions or conducted discovery, other than asking for copies or proof of all the money orders that formed the basis of CNB's claim. Bird perceived that his best leverage against CNB's claim was the huge task that CNB would have to undertake in proving a claim based on numerous money orders. Bird's Evidentiary Deposition by Respondent at 12–14. Bird also took into account the tremendous resources it would have taken for the estate to analyze the money orders and legal issues involved, as well as to actually litigate the objection. *Id.* at 15–16.

Bird realized in approximately 1996 that there would be funds available for creditors other than money order purchasers. Accordingly, he revived his objection to CNB's claim. Bird's Evidentiary Deposition by Petitioner at 3–5. Bird's testimony concerning document review (other than money orders) is inconclusive. Apparently, he and Greg Moldenhauer, NWFX's previous vice president of finance, did review CNB documents in June 1997. *Id.* at 11–16. But with respect to the specific issues of the extent of CNB's claim, documentation, and mitigation of damages issue, Bird explained:

> The only thing I specifically remember is asking for copies of all the money orders, knowing that if he [Judge Fussell] granted that, then that put a lot of pressure on the bank and time and expense that they would want to avoid. That's the only thing I specifically remember at this point in time.

*Id.* at 16.

After Judge Fussell ruled that CNB did have to provide the money order documentation, Bird stated that he

> then kind of went into a settlement mode. And it was not, I don't remember it being my intent to discover every document, analyze every document,

come to every conclusion about every document, before we tried to settle it. So whether it's likely I would have done it or not done it, I don't know at that point in time.

*Id.* at 17.

Bird had no recollection of having seen the Harwood CNB Memo of June 1, 1990. *Id.* at 18.

### B. Felix Hernandez

Second, Shaffer asked this Court to focus on Bird's testimony concerning Felix Hernandez. Hernandez served NWFX in its Florida money order operation. As the CNB and NWFX contractual relationship began to unravel, CNB hired Hernandez to assist in winding down operations in Florida, primarily to maximize remittances from the various money order retailers. In pertinent part, Bird testified as follows concerning Hernandez:

A. Well, to—prove my theory, or to force the bank to prove that they had taken sufficient commercially reasonable steps to collect all the money from the agents, the bank had used a fellow named Felix Hernandez, who was an employee of NWFX at one time, and then, later, worked for the bank under a contract, as I understood it.

He was the primary point guy. He had hired all the agents, as I understand it. He knew all the agents; probably knew who had not remitted their funds. And I think I would have to—we would have gone to Florida, me, and Mr. Cohen, at the least, would have had to go to Florida, talk to Mr. Hernandez, and then take his deposition regarding the efforts of the bank in collecting those funds. And quite frankly, I never knew what the testimony was going to be. We may have gone down there, and Hernandez says, boy, the bank just did a cracker jack job, and they did—turned over every stone, and they did a wonderful thing. And my theory wouldn't have been so strong as I thought it was going to be.

Or we might have gone down there and he said, ah, the bank wasn't interested in collecting any money, they didn't do anything of any significance. They let millions of dollars, you know, thousands—hundreds of thousands of dollars get away from them that they never pursued.

I never knew what his testimony was going to be. I've never talked to him.

But at a minimum, we would have had to go and take his deposition, and perhaps take depositions of other agents, as to what efforts had been gone to by the bank to collect the funds. So I think there would have been a series of depositions, at least, in South Florida.

Petitioner's Exhibit S 1 at 63–64.

Shaffer and CNB took Bird's evidentiary deposition on October 11, 2007. As of that date, Bird could recall that Hernandez had been an NWFX employee but could not recall that he had ever sued CNB. He was presented with copies of various pleadings and correspondence, as well as Hernandez's 1993 deposition. He had no recollection of ever seeing any of those documents prior to their being presented to him at his evidentiary deposition. Bird's Evidentiary Deposition by Petitioner at 18–20. Bird's recollection was refreshed when he was presented with his notes concerning his analysis of CNB's claim that reflected knowledge that Hernandez had sued CNB *Id.* at 20–22. Moldenhauer testified that he told Bird at some point that Hernandez would assert that CNB was at fault in the close-out of the money order operations in Florida.

But that position would have been fairly self-evident given that Bird apparently

knew at the Settlement Hearing that Hernandez had sued CNB—as did Moldenhaur, who attended the Settlement Hearing—and knew that the parties might have differing views on the subject (hence, litigation). Simply knowing Hernandez's position does not render false Bird's representations to Judge Fussell. Bird never deposed Hernandez, never read his deposition, and could not definitely state what Hernandez might say at some later point, either when Bird eventually took his deposition, or at trial. This is a part of the normal uncertainties of litigation.

At trial on the Petition, Shaffer introduced the June 26, 1993 Hernandez deposition. The deposition was taken in the context of Hernandez's suit against CNB. Bird was neither a party to, nor present at, the deposition. Additionally, the record does not support Shaffer's assertion that Bird somehow should have been aware of the particulars of the deposition. Further, the Court has reviewed the entire deposition; it is simply that—Hernandez's responses to questions posed by CNB's counsel. Hernandez was a difficult deponent who often contradicted himself and suffered selective memory lapses. Additionally, his counsel continually interfered with the deposition's flow. Without an exacting deposition taken by Bird in the specific context of CNB's claim against the NWFX estate, Bird would have had difficulty making definitive representations concerning Hernandez contrary to his statements to Judge Fussell at the Settlement Hearing.

As stated by the Eighth Circuit in *Landscape*, "fraud on the court" encompasses a "scheme to interfere with the judicial machinery performing the task of impartial adjudication." 46 F.3d at 1422. Here, Shaffer has failed to meet his burden of proving fraud on the court. Additionally, Shaffer's counsel at trial could offer no explanation as to why Bird would have purposely misled Judge Fussell on these issues. This Court likewise cannot divine a rationale and declines to draw the inferences Shaffer suggests.

## IV. DELAY

Finally, there exists in this instance unexplained and, frankly, inexcusable delay on Shaffer's part. With the issuance of the 2001 Bird Order, Shaffer then immediately had before him all the operative facts concerning the Settlement, Bird's defalcations, and its consequent effects on the math about which he now complains. Shaffer ignored this ideal proximate opportunity to address the issue before the same judge at, perhaps, a time when the court could have delayed distribution or ordered the estate replenished in a manner affording CNB a meaningful chance of full or substantial recovery. As stated earlier, "unexplained delays [by the movant] bear on the basic concept of finality of judgment and the proof." *Bulloch*, 763 F.2d at 1121. Shaffer's delay, especially given that Judge Fussell has already fashioned an appropriate remedy, reflects that this is in reality just one more effort to litigate against CNB.

## V. SUCCESSOR LIABILITY

The Court need not determine whether BancorpSouth Bank is CNB's successor-in-interest or otherwise liable had this Court set aside the Settlement, thus obligating CNB to replenish the estate in the amount of $500,000. That issue is reserved for future consideration should it become necessary.

**Conclusion**

For the reasons stated herein, the relief requested in the Petition is denied. The

Court will issue a show cause order why this consolidated case should not be closed.

IT IS SO ORDERED.